1    **WO**

6         **IN THE UNITED STATES DISTRICT COURT**

7            **FOR THE DISTRICT OF ARIZONA**

9    CWT Canada II LP, et al.,                    No. CV-16-00607-PHX-DGC

10              Plaintiffs,                       **ORDER**

11   v.

12   Elizabeth J Danzik and Deja II LLC,

13              Defendants.

        Defendant Deja II LLC moves to set aside the default judgment and fee award
against it pursuant Rule 60(b).  Doc. 72.  The motion is fully briefed, and the Court heard
oral argument on April 24, 2017.  For reasons stated below, the motion will be denied.

**I.    Background.**

        Plaintiff CWT Canada II LP filed this suit in March 2016, seeking monetary
damages and asserting claims against Defendants Elizabeth Danzik and Deja II for fraud,
conversion, breach of contract, unjust enrichment/restitution, constructive trust, and
accounting.  Doc. 1.  Ms. Danzik has stated under oath that she is the sole owner of Deja
II (Doc 33-1, ¶ 23), and her counsel confirmed during oral argument that she is the sole
manager as well.  When neither Defendant responded to the complaint after being served,
default was entered by the Clerk under Rule 55(a).  Doc. 16 (Deja II); Doc. 21 (Danzik).
On July 27, 2016, Plaintiffs moved for a default judgment against both Defendants.
Doc. 29; Doc. 34.

Upon learning of the default entered by the Clerk against her and that Plaintiffs were seeking default judgment as well, Ms. Danzik hired counsel. Her current attorney stated during oral argument that she learned at the time that default had been entered against Deja II as well. On August 2, 2016, Ms. Danzik moved to set aside the default against her (Doc. 33), but her motion said nothing about Deja II, the default that had been entered against it, or the motion for default judgement against it (*id*). The Court granted Ms. Danzik's motion and set aside her default. Doc. 47. The Court also granted the unopposed motion for default judgment against Deja II in the amount of $999,975.00, with $332,324.50 in pre-judgment interest through July 22, 2016. Doc. 49.

The default and default judgment against Deja II were known to Ms. Danzik. As noted, her counsel confirmed during oral argument that she learned of the default entered by the Clerk against Deja II when she learned of the default against herself. In addition, Plaintiffs' motion for default judgement against her and Deja II was served on her attorney and on Deja II's registered agent. Doc. 34 at 19. The default judgement against Deja II was also sent to her attorney. Doc. 49. Ms. Danzik's answer, filed after her default had been withdrawn, acknowledged that there were claims pending against Deja II. Doc. 50. And after Ms. Danzik's counsel withdrew and she obtained new counsel (Docs. 64, 66), her new attorneys acknowledged that the default judgement had been entered against Deja II. Doc. 67 at 2 ("Defendant Deja II, LLC . . . is not represented and a default judgement has been entered against it."). The new attorneys now ask the Court to set aside the default judgment, arguing, largely without explanation, that it was the fault of Ms. Danzik's previous lawyer.

**II.    Analysis.**

In deciding whether to set aside a default judgment, a court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether the party has a meritorious defense; or (3) whether withdrawing the default judgment would prejudice the other party. *United States v.*

*Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (citing *Franchise Holding II, LLC. v. Huntington Restaurants Grp., Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004)). Any one of these factors provides a sufficient reason for refusing to set aside a default judgment. *Id.* In this instance, the Court need only examine the issue of culpability.

### A. Culpability Standard.

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis in original) (quoting *Alan Neuman Productions, Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988)); *see also Meadows v. Dominican Republic,* 817 F.2d 517, 521 (9th Cir. 1987) (defendant "intentionally declined" service). The Ninth Circuit has established two separate standards for whether consciously failing to respond to a complaint fits the meaning of "intentionally" as used in the definition of culpability. Which standard is applicable depends on whether the party seeking to set aside default is considered "legally sophisticated." *Mesle*, 615 F.3d at 1093.

When parties are legally sophisticated, the court may deem their conduct culpable if they have "received actual or constructive notice of the filing of the action and failed to answer[.]" *Franchise Holding II*, 375 F.3d at 926; *Mesle*, 615 F.3d at 1093 ("When considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality."); *see also Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988) (holding a defendant's conduct was culpable because he "had actual notice of the summons and complaint" soon "after it was served" and, "as a lawyer, presumably was well aware of the dangers of ignoring service of process").

When a party is not legally sophisticated, "the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to

answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mesle*, 615 F.3d at 1091 (quoting *TCI Group,* 244 F.3d at 697). "[A] defendant's conduct [is] culpable . . . where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.*

### B.    Deja II is a legally sophisticated party.

A party is legally sophisticated when it has experience in lawsuits involving issues similar to those in the current litigation. *See TCI Group*, 244 F.3d at 699 n.6 ("we have tended to consider the defaulting party's general familiarity with legal processes or consultation with lawyers at the time of the default as pertinent to the determination whether the party's conduct in failing to respond to legal process was deliberate, willful or in bad faith."); *Clearwater 2007 Note Program, LLC v. Piell*, No. 1:12-cv-00208-BLW, 2014 WL 576098, at *3 (D. Idaho Feb. 11, 2014) (finding that a party was legally sophisticated, and thus culpable for failing to respond to a summons, stating "[t]his is not [defendant's] first time in federal court and the fact of his prior familiarity with the world of lending and lawsuits is of significance in this motion."). Parties are also legally sophisticated when they are "well aware of the dangers of ignoring service." *Mesle*, 615 F.3d at 1093 (citing *Direct Mail Specialists*, 840 F.2d at 690); *see also Joe Hand Promotions, Inc. v. Manzo*, 2:15-cv-00313-JWS, 2016 WL 5416141, at *3 (D. Ariz. September 28, 2016) (finding that a defendant was legally sophisticated when he claimed that he was "aware of the need to respond to a complaint from his experience with being sued in the past" by "the same plaintiff in the case, and in the past he hired a lawyer and responded to the complaint.").

In contrast, parties are not legally sophisticated when they are unrepresented by counsel at the time of default and are generally unfamiliar with the litigation process. *See Mesle*, 615 F.3d at 1093 ("Here, we need not determine, however, whether the *Franchise*

*Holding II* standard applies to more than sophisticated parties represented by counsel who may be presumed aware of their actions . . . Mesle is not a lawyer and [] he was unrepresented at the time of default."); *see also Lowery v. Barcklay*, No. CV-12-01625-PHX-RCB, 2014 WL 47349, at \*5 (D. Ariz. Jan. 7, 2014) (finding defendant was not legally sophisticated because he was not a lawyer and was not represented when the Clerk entered default in the action.).

In this case, Deja II and Ms. Danzik are legally sophisticated parties subject to the standard of culpability set forth in *Franchise Holding II*.  *See Mesle*, 615 F.3d at 1093.  Like the defendant in *Joe Hand Promotions*, Ms. Danzik, who is the sole owner and manager of Deja II, has previously engaged in litigation with Plaintiffs.  Like the defendant in *Clearwater*, Ms. Danzik has experience in lawsuits involving issues similar to the issues in this case.  In a letter to the Court following the Clerk's entry of default against her, Ms. Danzik averred that she "is very familiar" with the techniques of Plaintiffs' counsel, Jeffery Eilender, "to get the attention of judges in an attempt to divert attention from the facts and confuse the issues[.]"  Doc. 24 at 1.  Ms. Danzik continued:

> Jeffery Eilender is attempting to solidify a default judgment against me so that his clients can avoid trying the case on the facts.  Eilender continues with misdirection, falsehoods, and omitted facts to improperly enter evidence through his letter writing instead of following the rules.
>
> I know for a fact that Eilender is being filed on for ethics and other charges in New York, Wyoming, Arizona, British Columbia and Alberta Canada for a whole host of offenses.  I also know for a fact that my husband's former employer, RDX and his case for civil contempt is under appeal.  As well, the facts in this lawsuit filed by Eilender are being heard in the Federal Bankruptcy Court in Wyoming, and in the Court of the Queen's Bench in Alberta Canada.  Jeffery Eilender is also being charged with willfully violating two federal stays in January of this year in New York.  Jeffery Eilender likes to omit substantial facts from his court filings in his relentless attempts to maliciously prosecute me in the hopes of bankrupting me by forcing me to fight a large law firm in Arizona, 1200 miles from where I work and reside, for something that I did not do.
>
> Also as clear proof of Eilender's professional conduct is the fact that he filed the lawsuit against me on March 4th, 2016, and Jeffery Eilender is claiming that service was made only two days before the 90 day, limit, according to my husband's attorney.  If I was evading service as Eilender claims; Where was his process servers from March 3rd to May 24th?

*Id.* at 1-2. This letter shows that Ms. Danziki, the owner and manager of Deja II, has substantial experience litigating against Plaintiffs' counsel. It also shows that she understands service of process, the recently-amended 90-day period for service, and default judgments.

In addition, other evidence submitted by Plaintiffs shows the extent of her legal experience. Plaintiffs note that Ms. Danzik has been named as a defendant in at least nine lawsuits over the past eleven years filed in Arizona state and federal courts. Doc. 77, ¶ 4; Doc. 77-3 at 2 (*Intagrico Composites LLC v. Danzik et al.,* CV-2006-010512 (Maricopa Superior Ct. filed Jul. 12, 2006)); 4 (*Arrowhead Community Bank v. Danzik et al.*, CV-2007-06408 (Maricopa Superior Ct. filed Apr. 13, 2007)); 6 (*Olson et al. v. Danzik et al.*, CV-2008-064870 (Maricopa Superior Ct. filed Dec. 8 2008)); 10 (*GBJ, Ltd. v. Danzik et al.*, CV-2009-06229 (Maricopa Superior Ct. filed Feb. 18 2009)); 12 (*Dairy Engineering Co. v. Danzik*, CV-2009-12284 (Maricopa Superior Ct. filed May 15, 2009)); 13 (*N. 43rd Ent. LLC v. Danzik*, CV-2009-22305 (Maricopa Superior Ct. filed Jul. 13, 2009)); 15 (*SR Bray LLC v. Danzik et al.*, CV-2009-034557 (Maricopa Superior Ct. filed Oct. 30, 2009)); 18 (*Larson v. White Mountain Grp. LLC et al.*, 2:11-cv-01111-FJM (D. Ariz. 2011); 28 (*Larson v. Danzik et al.*, CV-2011-018103 (Maricopa Superior Ct. filed Aug. 30, 2011)).

In *Larson v. White Mountain Group LLC*, a 2011 case filed in this Court, Dennis Danzik was named as a Defendant along with his wife, "Jane Doe Danzik." *Larson*, 2:11-cv-01111-FJM (Doc. #1). The Danziks failed to answer and the Clerk entered default. *Id.* (Docs. 14-15). After receiving notice of the entry of default, the Danziks made a motion to set aside the default (*id.* (Doc. 27), and included a declaration from Ms. Danzik in support of that motion (*id.* (Doc. 29)).

Ms. Danzik is a legally sophisticated party with experience in defending litigation and using legal counsel. Because she claims to be the sole owner and manager of Deja II, the Court finds that Deja II is also legally sophisticated. Accordingly, the Court

concludes that Deja II may be held to the *Franchise Holding II* standard of culpability. *See Mesle*, 615 F.3d at 1093.

### C. Deja II engaged in a knowing failure to respond.

When the party seeking to set aside default is legally sophisticated, the court may deem their conduct to be culpable if they have "received actual or constructive notice of the filing of the action and failed to answer[.]" *Franchise Holding II*, 375 F.3d 922, 926 (9th Cir. 2004); *Mesle*, 615 F.3d at 1093. In this case, the record shows that Deja II received actual notice of the filing against it and repeatedly failed to answer.

On March 4, 2016, Plaintiffs filed this action against Ms. Danzik and Deja II. Doc. 1. On April 1, 2016, service was executed on Deja II's authorized agent, Lisa Kline, at "c/o Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, DE 19958." Doc. 11. Accordingly, the Court finds that Deja II received actual notice of this action by April 1, 2016. *See* Fed. R. Civ. P. 4(a), (h).

Deja II argues that its failure to respond is not culpable because, while the authorized agent may have been served, Ms. Danzik was not yet aware of the litigation. Doc. 79 at 2. Setting aside the fact that service on a registered agent generally comes to the attention of an LLC's sole owner and manager, this position is not persuasive because Deja II failed to respond even well after Ms. Danzik had retained counsel and responded to this action.

On June 29, 2016, the Clerk entered default as to Deja II. Doc. 16. On July 7, 2016, the Clerk entered default against Ms. Danzik. Doc. 21. As noted above, Ms. Danzik's counsel agreed at oral argument that she learned of the default against Deja II when she learned of the default against herself. Ms. Danzik wrote two letters to the Court, detailing her understanding of the litigation and asking for time to hire an attorney. Doc. 22, 24. Counsel appeared for her, but not for Deja II, on July 15, 2017. Doc. 26.

On August 4, 2016, Plaintiffs filed a motion for default judgment against both Ms. Danzik and Deja II. Doc. 34. That same day, Ms. Danzik, now represented by counsel,

filed a motion to set aside the Clerk's default against her, but not against Deja II. Doc. 33. Two weeks later, Ms. Danzik, through her attorney, responded to Plaintiffs' motion for default judgment against her and Deja II, but did not respond on behalf of Deja II. Doc. 36. The Court set aside the Clerk's default against Ms. Danzik (Doc. 47), and, on October 17, 2016, granted the unopposed motion for default judgment against Deja II (Doc. 49). The Court's docketing system shows that the default judgement against Deja II was served on Ms. Danzik's attorney. Doc. 49.

On October 31, 2016, Ms. Danzik filed her answer to the complaint. Doc. 50. In her answer, Ms. Danzik made clear that she was representing her interests alone. She responded to multiple allegations against Deja II in the following manner: "Paragraph [124-28] of the Complaint does not call for an admission or denial from this answering Defendant, as the cause of action is brought only against Deja II." *Id.*, ¶¶ 124-28. On November 21, 2016, Ms. Danzik filed an amended answer, but made no changes on behalf of Deja II. Doc. 62, ¶¶ 124-28.

On December 12, 2016, new counsel appeared for Ms. Danzik. Doc. 66. These new attorneys did not appear for Deja II. *Id.* On January 10, 2017, the parties submitted a Rule 26(f) case management report. Doc. 67. The parties jointly stated that "Defendant Deja II, LLC ('Deja II') is not represented and default judgment has been entered against it." *Id.*, ¶ 1. The parties acknowledged that "Defendant Deja II never appeared. On October 17, 2016, the Court entered a default judgement against Deja II in the amount of $999,975.00, $332,324.50 in pre-judgment interest through July 22, 2016, and post judgment interest pursuant to 28 U.S.C. 17 1961." *Id.*, ¶ 5.

The Court held a case management conference on January 13, 2017. Doc. 68. No suggestion was made that counsel for Ms. Danzik was representing Deja II, or that the default judgment against Deja II should be withdrawn. Based on the parties' representations at the conference, the Court issued a case management order on January 20, 2017, setting the schedule for the remainder of this litigation. Doc. 69. On

January 31, 2017, ten months after receiving notice, Deja II filed its motion to set aside default, through the same counsel who two weeks earlier had stated Deja II was not represented. Doc. 72.

The Court concludes that Deja II received notice of this lawsuit no later than April 1, 2016, the date it was served. The sole owner and manager of Deja II – Ms. Danzik – had actual notice that Deja II was a party to this lawsuit and that default had been entered against it by the Clerk no later than July 15, 2016.[1] Based on these facts, and Deja LL's status as a legally sophisticated party, the Court concludes that Deja II's failure to respond was culpable under the *Franchise Holding II* standard. *See Franchise Holding II*, 375 F.3d at 926; *Mesle*, 615 F.3d at 1093.

### D. Ms. Danzik's former counsel's alleged negligence does not constitute an "extraordinary circumstance."

Deja II attempts to blame Ms. Danzik's former counsel for its failure to appear in this case, but Deja II has asserted no evidence in support of this assertion – no affidavits, no declarations, no documents. Ms. Danzik retained counsel after she learned that default had been entered against her and the LLC she solely owns and manages, but Deja II's motion provides no explanation as to why or under what circumstances counsel thereafter allegedly failed to act on behalf of Deja II. And the history cited above demonstrates that Ms. Danzik and her counsel were well aware of Deja II's failure to appear and the default judgment entered against it.

It is well established that "'[c]lients must be held accountable for the acts and omissions of their attorneys,' and [Defendants] 'cannot now avoid the consequences of the acts or omissions" of its [former] counsel. *S.E.C. v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1101 (9th Cir. 2010) (quoting *Pioneer Inv. Servs. Co. v. Brunswick*

---

[1] Defense counsel stated during oral argument that Ms. Danzik retained counsel after learning that default had been entered by the Clerk against her and Deja II. Counsel appeared on July 15, 2016. Doc. 26.

*Assocs. Ltd.*, 507 U.S. 380, 396-97 (1993)).  "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney."  *Pioneer*, 507 U.S. at 397 (quotation marks and citations omitted).

But "where the client has demonstrated gross negligence on the part of his counsel, a default judgment against the client may be set aside pursuant to Rule 60(b)(6)."  *Community Dental Services v. Tani,* 282 F.3d 1166, 1169 (9th Cir. 2002).  "[C]ourts have traditionally used the phrase 'gross negligence' to signify a greater, and less excusable, degree of negligence, and have required parties alleging gross negligence to establish the existence of a more serious violation of the actor's duty[.]"  *Id.* at 1170.

In *Community Dental*, the Ninth Circuit held that an attorney was grossly negligent where he "virtually abandoned his client by failing to proceed with his client's defense despite court orders to do so."  *Id.*  The attorney in question engaged in a litany of extraordinary behavior, including failing to sign a stipulation for an extension of time to answer that had already been signed by the opposing party, failing to serve a copy of the answer on the opposing parties after filing it two weeks late, failing to contact opposing counsel for preliminary settlement discussions despite being ordered to do so, failing to oppose a motion to strike his client's answer, failing to attend various hearings, and actively misleading his client regarding the progress of the case.  *Id.* at 1170-71.  "Such failures and actions cannot be characterized as simple attorney error or 'mere neglect.'  *Id.* at 1171.

Here, Deja II argues that Ms. Danzik's former counsel engaged in gross negligence that prevented Deja II from participating in the litigation, and that setting aside the default judgment is therefore appropriate under Rule 60(b)(6).  *Id.* (citing *Community Dental*, 282 F.3d at 1164); Doc. 72 at 2.  But the party alleging gross negligence must show a more serious violation of the actor's duty.  *Community Dental*,

282 F.3d at 1170.  In this instance, Deja II has put forward no evidence to show that Ms. Danzik's former counsel was grossly negligent, other than to say that he did not file a motion to set aside default on behalf of Deja II.  Deja II does not allege that Ms. Danzik hired her former counsel to represent it.  Instead, Deja II contends that "[w]hether or not Elizabeth Danzik's fee agreement included Deja II is irrelevant.  In advising Mrs. Danzik[,] [her former counsel] should have included Deja II as to do so would have protected his client and cost her virtually no extra expenditure of fees."  Doc. 79 at 2 n.1.

But without any evidence that Ms. Danzik – who clearly understood the nature of litigation, the concept of service and default judgments, and her own ownership and management of Deja II – had sought to have Deja II represented by her counsel, the Court cannot conclude that counsel's conduct was grossly negligent.  Nothing in the record indicates that any such relationship existed between Ms. Danzik's former counsel and Deja II.  Even Ms. Danzik's current counsel expressly represented to the Court on January 10, 2017, that Deja II was unrepresented.  Doc. 67.

### E.    Summary.

The Court recognizes that Rule 60(b) is remedial in nature and is to be applied liberally.  *See TCI Group*, 244 F.3d at 696.  This is one of the rare cases, however, where the interest of resolving the dispute on the merits must give way to the competing interest of finality.  *See Mesle*, 615 F.3d at 1091 n.1 (noting that Rule 60(b) is applied less liberally than Rule 55(c) because in the Rule 55(c) context "there is no interest in the finality of the judgment with which to contend").  This litigation has been pending for more than one year, the default against Deja II was entered by the Clerk ten months ago, Deja II's sole owner and manager has been involved in this case and represented by counsel for more than nine months, the default judgment has been in place for more than six months, and the discovery period is more than half over.  Defendants are legally sophisticated parties, and have presented no reasonable explanation for Deja II's delay.

The Court finds that Deja II was culpable for failing to respond, and a "proper finding of culpable conduct by [the defendant is] sufficient to justify the district court's refusal to grant a Rule 60(b) motion." *Community Dental*, 282 F.3d at 1172; *see also Am. Ass'n of Naturopathic Physicians v. Hayhurst,* 227 F.3d 1104, 1109 (9th Cir. 2000) (citing *In re Hammer,* 940 F.2d 524, 526 (9th Cir.1991)).

**IT IS ORDERED** that Deja II's motion to set aside default judgment (Doc. 72) is **denied**.

Dated this 24th day of April, 2017.

_____
David G. Campbell
United States District Judge