1    **WO**

6    **UNITED STATES DISTRICT COURT**

7    **DISTRICT OF ARIZONA**

8    CWT Canada II Limited Partnership, an          No.  CV16-0607 PHX DGC
     Ontario, Canada Limited Partnership, et             CV16-2577 PHX DGC
9    al.,                                                 CV17-0969 PHX DGC

10                          Plaintiffs,              **ORDER**

11            v.

12   Elizabeth J. Danzik, an Individual, et
     al.,

13                          Defendants.

        The three consolidated cases in this matter concern business disputes among the various parties – disputes which have been the subject of many lawsuits. Before the Court are five fully briefed motions. The Court addresses each below.[1]

**I.    General Background.**

        Dennis Danzik ("Dennis") is the chief executive officer of RDX Technologies, Corp. ("RDX"), a now-defunct corporation. Dennis also owns Danzik Applied Sciences, LLC ("DAS"). Dennis and his spouse, Elizabeth Danzik ("Elizabeth"), own Deja II, LLC ("Deja"). CWT Canada II Limited Partnership ("CWT Canada") and Resource Recovery Corporation ("RRC") entered into a transaction to sell their company, Changing World Technologies, L.P. ("CWT LP"), to RDX. CWT Canada and RRC also entered into a transaction to purchase RDX stock. Kevin Bridges was the chief financial officer of RDX. Tony Ker was the chairman of the RDX board, and Richard Carrigan was a board

---

[1] The requests for oral argument are denied because oral argument will not aid the Court's decision. *See* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

member. Jean Noelting, Bruce MacFarlane, and Brian Appel were senior officers of CWT LP.

On March 4, 2016, CWT Canada and RRC sued Elizabeth and Deja, alleging that Elizabeth received $730,000 that Dennis stole from them, and that she defrauded them in the separate RDX stock transaction. *CWT Canada II, LP v. Elizabeth J. Danzik*, No. 16-cv-00607-DGC (the "Elizabeth Action"). Next, CWT Canada and RRC sued DAS, Bridges, Carrigan, and Ker, alleging that they knew of and aided in Dennis's fraudulent theft scheme. *CWT Canada II, LP v. Kevin Bridges*, No. 16-cv-02577-DGC (the "Bridges Action"). Finally, Dennis and RDX sued CWT Canada, RRC, Noelting, MacFarlane, and Appel, alleging that they defrauded him into the purchase of CWT LP. *Dennis M. Danzik v. CWT Canada II, LP*, No. 17-cv-00969-DGC (the "Dennis Action"). On September 27, 2017, the Court granted the parties' motion to consolidate these actions and directed the parties to make subsequent filings in the Elizabeth Action.[2]

These cases come after CWT Canada, RRC, and Noelting already obtained a judgment against Dennis and RDX in New York state court. *GEM Holdco, LLC, et al. v. Changing World Technologies, L.P., et al.*, Index No. 650841/2013 (Sup. Ct. N.Y. Cty.) (the "New York Action"). Another action – by Dennis and RDX against CWT Canada, RRC, Appel, Noelting, and MacFarlane – remains pending in a Canadian court. *RDX Technologies Corp. v. Appel*, File No. 1401-09394 (Ct. of Queens Bench, Alberta, Canada) (the "Canada Action").

## II.    12(b)(6) Standard.

Four of the motions seek dismissal under Rule 12(b)(6). A successful motion to dismiss under Rule 12(b)(6) must show either that the complaint lacks a cognizable legal theory or fails to allege facts sufficient to support its theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S.

---

[2] Citations to documents filed in the Bridges Action, 16-cv-02577, or the Dennis Action, 17-cv-00969, will be to "Bridges Doc." or "Dennis Doc.," respectively. Citations to documents filed in the Elizabeth Action, 16-cv-00607, will simply be to "Doc."

662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

## III. The Bridges Action.

CWT Canada and RRC sued DAS and various other defendants in the Bridges Action, and Defendant Ker has filed a counterclaim against them. Bridges Doc. 81. CWT Canada and RRC moved to dismiss the counterclaim. Bridges Doc. 86. Ker filed an amended counterclaim ten days later (Bridges Doc. 88), and then a second amended counterclaim ("SAC") (Doc. 99). CWT Canada and RRC have filed a motion to dismiss the SAC. Doc. 107.

### A. First Motion to Dismiss the Counterclaim (Bridges Doc. 86).

Ker argues that the first motion should be dismissed as moot in light of his amended counterclaim. Bridges Doc. 89. The Court agrees. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (An "amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (quoting *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012)). The Court will deny as moot CWT Canada and RRC's motion to dismiss the original counterclaim (Bridges Doc. 86).

### B. Motion to Dismiss the SAC (Doc. 107).

The SAC asserts claims for abuse of process and defamation. Doc. 99 at 25-26. The following facts are relevant to determining what law applies to the claims. Ker resides in British Columbia, Canada, and served on the board of RDX during and after its acquisition of CWT LP. Doc. 99 at 16, 18-19. CWT Canada is organized in Delaware; has its principal place of business in Ontario, Canada; and its general partner is incorporated and has its principal place of business in Canada. *Id.* RRC is incorporated in Delaware and has its principal place of business in New York. *Id.* at 17.

1        **1.      Choice of Law Standard.**

2            In diversity cases such as these, "the district court must apply the choice-of-law

3    rules of the state in which it sits." *Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir.

4    2000). Arizona follows the Restatement's "most significant relationship" test. *See Bates*

5    *v. Super. Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988); *Magellan Real Estate Inv. Tr. v. Losch*,

6    109 F.Supp.2d 1144, 1155 (D. Ariz. 2000); Restatement (Second) of Conflict of Laws.

7    Under this test, the law of the state that has the most significant relationship to an issue

8    governs that issue. In a tort claim, factors to consider include: "(a) the place where the

9    injury occurred, (b) the place where the conduct causing the injury occurred, (c) the

10   domicile, residence, nationality, place of incorporation and place of business of the

11   parties, and (d) the place where the relationship, if any, between the parties is centered."

12   *Magellan*, 109 F.Supp.2d at 1156 (quoting Restatement (Second) of Conflict of Laws

13   § 145). "These contacts are to be evaluated according to their relative importance with

     respect to the particular issue." *Id.*

14       **2.      Abuse of Process.**

15           Ker alleges that CWT Canada and RRC (collectively, "Counterdefendants")

16   "intimidated, threatened[,] and attempted to coerce" him to provide testimony against

17   Dennis and RDX in the New York Action. Doc. 99 at 22. He asserts that the New York

18   Action is fraudulent and baseless. *Id.* at 18-21. He claims that Counterdefendants used

19   tactics such as contacting him without notifying RDX's counsel, lying to him about

20   Dennis, and threatening to sue. *Id.* at 22-23. When Ker consistently refused to change his

21   testimony, Counterdefendants sued him, first in New York and then in this Court. *Id.*

22   at 23. Ker asserts that these suits are frivolous and were "initiated and pursued" solely for

23   the improper purpose of coercing him to "flip sides and testify against Dennis Danzik and

24   RDX." *Id.* Ker alleges that Counterdefendants have employed this strategy against other

25   key witnesses as well. *Id.* at 21-22.

26       **a.      Choice of Law.**

27           In Arizona, an abuse of process claim is generally governed by "the local law of

28   the state where the proceeding complained of occurred, unless, with respect to the

particular issue, some other state has a more significant relationship . . . to the occurrence and the parties[.]"  Restatement (Second) of Conflict of Laws § 155; *see also Xcentric Ventures LLC v. Borodkin*, No. CV-11-1426-PHX-GMS, 2012 WL 692976, at *5 (D. Ariz. Mar. 1, 2012).  Counterdefendants argue that New York law should apply to Ker's claim based on the New York suit, and that Arizona law should apply to his claim based on the Bridges Action.  Doc. 107 at 6-7 (citing *Xcentric*, 2012 WL 692976, at *5).  Ker's response does not address this issue, but it repeatedly cites Arizona law in discussing the abuse of process claim.  *See* Doc. 113 at 10-11.  The Court agrees with Counterdefendants.

The parties do not argue, and the Court does not find, that any state has a more significant interest in these claims than New York and Arizona, respectively.  Aside from being the states where the alleged abuses occurred, New York and Arizona have clear connections to the parties and the underlying occurrences giving rise to these claims. More importantly, the choice between New York and Arizona law does not concern a true conflict of laws – the abuse of process claim fails under the law of both states.

### b.     Failure to State a Claim.

To state an abuse of process claim under New York law, Ker must allege (1) "regularly issued process," (2) "intent to do harm without excuse or justification," and (3) "use of the process in a perverted manner to obtain a collateral objective."  *Casa de Meadows Inc. (Cayman Islands) v. Zaman*, 908 N.Y.S.2d 628, 632 (App. Div. 2010) (quoting *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. App. Div. 1984)).  Importantly, "'the institution of a civil action by summons and complaint is not legally considered process capable of being abused.'"  *Id.*

To state an Arizona abuse of process claim, Ker must allege "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings."  *Fappani v. Bratton*, 407 P.3d 78, 81 (Ariz. Ct. App. 2017) (quoting *Nienstedt v. Wetzel*, 651 P.2d 876, 881 (Ariz. Ct. App. 1982)).  Unlike the tort of malicious prosecution, which covers the initiation of civil proceedings with malice and without probable cause, abuse of process addresses misuse of process after proceedings

have been initiated. *See Joseph v. Markowitz*, 551 P.2d 571, 573-74 (Ariz. Ct. App. 1976). As in New York, "abuse of process requires some act beyond the initiation of a lawsuit[.]" *Id.* at 575. Courts have "explicitly rejected the contention that the initiation of a lawsuit can constitute the necessary act" for abuse of process under Arizona law. *Blue Goose Growers, Inc. v. Yuma Groves, Inc.*, 641 F.2d 695, 697 (9th Cir. 1981) (citation omitted). Courts also have held that an abuse of process claim will not lie where a lawsuit initiated in bad faith is "continued without justification." *Morn v. City of Phx.*, 730 P.2d 873, 876 (Ariz. Ct. App. 1986). Counterdefendants' "mere persistence in [this] litigation, even if based on an improper motive, does not sustain the tort." *Crackel v. Allstate Ins. Co.*, 92 P.3d 882, 888 (Ariz. Ct. App. 2004).

Ker's abuse of process counterclaim, based entirely on Counterdefendants' initiation and pursuit of the New York and Arizona lawsuits, fails to state a claim under New York and Arizona law and will be dismissed.

### 3. Defamation.

The SAC alleges that "around May-December 2015, Jean Noelting and/or Bruce MacFarlane, on behalf of Counterdefendants, spoke with Ryan Johnson and/or Brock Aynsley, accusing Ker of fraud and being in a conspiracy with Dennis Danzik." Doc. 99 at 23. Ryan Johnson was an RDX investor who worked for the company in investor relations and had relationships with many RDX shareholders, brokerage firms, and money managers. *Id.* at 23-24. Brock Aynsley was a broker for a large Canadian firm. *Id.* at 24. The SAC also alleges that around "May-December 2015, Jean Noelting, on behalf of Counterdefendants, spoke with Glenn Davies," an RDX director, telling him "that Ker was a liar and would be sued for fraud if he did not turn on Danzik." *Id.*

Ker asserts that he "has been in the public company business since 1996," "has derived the majority of his income based on a solid reputation," and has suffered "immense harm" as a result of Counterdefendants' statements and RDX's bankruptcy, which he alleges was caused by Counterdefendants' fraud. *Id.* at 18-19, 24. As a result of RDX's bankruptcy, the Alberta Securities Commission notified Ker that he is ineligible to serve as an officer or director of a public company. *Id.* at 24. Counterdefendants' actions

have allegedly destroyed Ker's reputation, "severely hinder[ing] his ability to raise money and work in his established profession." *Id.*

### a.     Choice of Law.

In Arizona, a defamation claim is generally governed by the law of "the state where the publication occurs . . . unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties[.]" Restatement (Second) of Conflict of Laws § 149; *see also Vazirani v. Annexus Distributors AZ, LLC*, No. 1 CA-CV 14-0815, 2017 WL 443529, at *6 (Ariz. Ct. App. Feb. 2, 2017).

The SAC asserts that the Court "should rely on the law of Canada, where the defamation occurred." Doc. 99 at 25 (citing *Vazirani*, 2017 WL 443529, at *6). Alternatively, the SAC asserts a defamation claim "pursuant to U.S. law." *Id.* at 26. The SAC does not otherwise identify where the allegedly defamatory statements were published.

Counterdefendants argue that Ker has not alleged "sufficient facts to determine which jurisdiction's law applies," and simply argue for dismissal under the law of Canada, New York, and Arizona. Doc. 107 at 10. Ker's response provides no additional illumination on the choice of law issue, but cites primarily Arizona law. *See* Doc. 113 at 2-10. Given this lack of facts, the Court cannot determine the important choice of law question at this stage. The Court will nonetheless briefly address Counterdefendants' other arguments to demonstrate that dismissal is improper on this record.

### b.     Counterdefendants' Arguments.

Counterdefendants argue that Ker's defamation claim should be dismissed for six reasons: (1) it is time barred, (2) the allegedly defamatory statements are nonactionable opinions, (3) the statements are protected by the litigation privilege and (4) the common interest privilege, (5) the SAC fails to plead the substance of Canadian law, and (6) the SAC's allegations are not sufficiently specific. Doc. 107 at 10-19.[3]

---

[3] Counterdefendants submit various declarations in support of these arguments and ask the Court to convert their 12(b)(6) motion into a motion for summary judgment. *See* Doc. 107 at 5; Docs. 108-11. At this early stage of the litigation, when the parties have

Counterdefendants argue that Arizona's statute of limitations bars the defamation claim. Doc. 107 at 15 (citing *Jackson v. Chandler*, 61 P.3d 17, 18 (Ariz. 2003) (under Arizona choice of law rules, "[t]he forum will apply its own statute of limitations barring the claim")); *see also* Restatement (Second) of Conflict of Laws §§ 142-43. Arizona subjects defamation claims to a one-year statute of limitations, which generally begins to run "on the date of publication of the defamatory material." *Clark v. Airesearch Mfg. Co. of Ariz., a Div. of Garrett Corp.*, 673 P.2d 984, 985 (Ariz. Ct. App. 1983); Ariz. Rev. Stat. § 12-541. Arizona courts toll the statute and apply the "rule of discovery" when "the defamation is published in a manner in which it is peculiarly likely to be concealed from the plaintiff, such as in a confidential memorandum or a credit report." *Id.* at 986. Ker argues that the statute should be tolled until he discovered the statements because they were published in confidential e-mails and verbal communications.[4]

A motion to dismiss on statute of limitations grounds may be granted only when the running of the statute is apparent on the face of the complaint, and "the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) ("Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it is not generally amenable to resolution on a Rule 12(b)(6) motion.") (citations and quotation marks omitted). The SAC's allegations do not preclude Ker from proving that the statute of limitations should be tolled because the defamation was published in an inherently secretive manner.

---

not engaged in meaningful discovery, the Court declines to do so. The Court will consider only the face of the SAC.

[4] Ker also cites *Dube v. Likins*, 167 P.3d 93, 102 (Ariz. Ct. App. 2007), for the proposition that A.R.S § 12-821.01 applies to defamation cases in Arizona. Doc. 113 at 3-4. That statute, which states that a cause of action accrues when the damaged party "realizes he or she has been damaged," applies to claims against public entities, schools, and employees. *See* A.R.S § 12-821.01(B). The statute does not apply to this suit between private parties.

Ker asserts that he was unable to discover the alleged defamation until September 2016.  Doc. 113 at 4.  Thus, if the statute is tolled until this alleged discovery, his claim would be timely even assuming Counterdefendants are correct that the claims relate back to July 25, 2017.  Counterdefendants' reliance on *Wietecha v. Ameritas Life Insurance Corp.*, No. CIV 05-0324-PHX-SMM, 2006 WL 2772838, at *5 (D. Ariz. Sept. 27, 2006), is misplaced because in that case the face of the complaint revealed that the alleged defamation was published in publicly available records.  And Counterdefendants misconstrue the SAC when they assert that it alleges the defamation was published "on websites."  Doc. 107 at 16.  That allegation goes to Ker's damages.  The actual defamation he alleges was published in e-mails and verbal communications.  *See* Doc. 99 at 23.  The Court cannot conclude at this stage that Ker's claims are barred by the statute of limitations.

Nor can the Court conclude on this record that the allegedly defamatory statements are nonactionable opinions.  Statements by senior CWT LP officers that Ker was a liar, a fraud, and conspiring with the RDX CEO could certainly imply "assertions of fact 'provable as false.'"  Doc. 107 at 18 (quoting *Flake v. Arpaio*, No. CV-15-01132-PHX-NVW, 2017 WL 3783349, at *9 (D. Ariz. Aug. 31, 2017)).  Given that the statements were made between sophisticated businesspersons and in the context of ongoing litigation involving RDX, the Court cannot conclude as a matter of law that they are pure opinion.

The Court similarly cannot conclude that either of the privileges asserted by Counterdefendants warrants dismissal.  Counterdefendants cite law from Arizona, New York, and Canada establishing immunity from liability for defamation when a defendant's statements are made in connection with a judicial proceeding.  *See* Doc. 107 at 11-12; *Green Acres Tr. v. London*, 688 P.2d 617, 621 (Ariz. 1984) (privilege applies to "defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding")[5]; *Front, Inc. v. Khalil*, 28 N.E.3d 15, 18 (N.Y. 2015) (privilege applies to

_____

[5] Counterdefendants cite a 2012 memorandum decision from the Arizona Court of

"oral or written statements made by attorneys in connection with a proceeding before a court 'when such words and writings are material and pertinent to the questions involved'"); *Monument Mining Ltd. v. Balendran Chong & Bodi*, 2012 BCSC 1769, *available at* http://canlii.ca/t/fv05h (privilege applies to "communications which take place during, incidental to and in the processing and furtherance of judicial or quasi-judicial proceedings"). But even without analyzing the complexities of these three standards, it is clear that the Court cannot dismiss Ker's claim on this basis. All three jurisdictions require that the statements have some relation to a judicial or quasi-judicial proceeding. Although it is clear from the SAC that RDX and Counterdefendants were involved in ongoing litigation at the time the statements were made, it is not clear whether these particular statements were related to such litigation or made in preparation for the suit against Ker – especially because at least one of the recipients of the statements appears to be a third party with no connection to the litigation.

Counterdefendants also cite law from each jurisdiction establishing a qualified privilege for communications between persons sharing a common interest in a particular subject matter. Doc. 107 at 14-15 (citing *Theodosakis v. Clegg*, No. 4:14-CV-2445-TUC-JAS-BPV, 2017 WL 1294529, at *14 (D. Ariz. Jan. 30, 2017), *report and recommendation adopted,* No. 4:14-CV-2445-TUC-JAS, 2017 WL 1210345 (D. Ariz. Mar. 31, 2017) (privilege applies "where an occasion arises in which 'one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them'"); *Konikoff v. Prudential Ins. Co. of Am.*, No. 94CIV.6863(MBM)(MHD), 1999 WL 688460, at *13 (S.D.N.Y. Sept. 1, 1999), *aff'd,* 234 F.3d 92 (2d Cir. 2000) ("Those sharing a conditional privilege to communicate defamatory matter concerning their common interests include, among others, partners, fellow officers of a corporation, fellow shareholders, fellow employees and persons associated together in professional activities."); *Fast v. Cowling*, 1996 CanLII 1049 (BC SC), *available at* http://canlii.ca/t/1f2bp (privilege applies to statements made "for the purpose of pursuing or protecting some private interest of either the publisher or the

Appeals, but that case may not be cited under Arizona Supreme Court Rule 111(c).

person defamed or some third person, if the publication is made to a person who has some corresponding interest in receiving the information")). Again, however, the Court cannot conclude at this stage that the privilege applies, especially given the inclusion of a person who appears to be unaffiliated with RDX or Counterdefendants. Moreover, all three jurisdictions allow a plaintiff to overcome this qualified privilege on a showing that the privilege was abused. Thus, even if the privilege applies, the Court cannot conclude that Ker would be unable to overcome it.

Counterdefendants argue that to the extent Canadian law applies, Ker's claim should be dismissed because he "fails to plead the substance of Canadian defamation law" in the SAC. Doc. 107 at 17. In support, they cite *Iafrate v. Compagnie Generale Transatlantique*, 106 F. Supp. 619, 622 (S.D.N.Y. 1952), which held that "[f]oreign law is a matter of fact which must be pleaded and proved." *Iafrate* was decided before current Federal Rule of Civil Procedure 44.1 was adopted, and is contradicted by that rule and Ninth Circuit precedent. *See* Fed. R. Civ. P. 44.1 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing."); *de Fontbrune v. Wofsy*, 838 F.3d 992, 997 (9th Cir. 2016) ("Prior to [the adoption of Rule 44.1] foreign law was viewed as a question of fact to 'be proved like other facts.'"). The SAC gave notice that it raised a claim under Canadian law, and Ker was not obligated to plead the substance of that law. Going forward, however, Ker should cite and explain Canadian law in his filings with the Court.

Finally Counterdefendants argue that to the extent the claim is based on Arizona or New York law, it should be dismissed for lack of specificity. Doc. 107 at 18-19. They cite various cases and suggest that Ker has failed to identify when and where the defamation occurred, and who made the statements to whom. *Id.* The Court finds that Ker has met his burden at this stage of alleging sufficient facts to state a claim that is plausible on its face. Ker has identified two specific individuals who allegedly made the statements, the precise content of the statements, three specific individuals to whom the statements were allegedly published, and the approximate timeframe during which the statements were made. *See* Doc. 99 at 23-24. These allegations are sufficient to put

Counterdefendants on notice of the allegations against them. *See Hamilton v. Yavapai Cmty. Coll. Dist.*, No. CV-12-08193-PCT-GMS, 2016 WL 5871502, at *2 (D. Ariz. Oct. 7, 2016) ("[A] plaintiff's complaint in a defamation case needs to provide sufficient content and context of the alleged defamatory statement to ensure that the defendant is on notice of the allegations against him."). Further details may be fleshed out during discovery.

## IV.    The Dennis Action.

Dennis and RDX's (collectively, "Plaintiffs") first amended complaint ("FAC") asserts claims for fraud, negligent misrepresentation, breach of contract, and breach of the implied warranty of good faith and fair dealing against CWT Canada, RRC, Noelting, MacFarlane, and Appel (collectively, "Defendants"). Dennis Doc. 49 ¶¶ 119-42. Defendants move to dismiss under Rule 12(b)(6), primarily on the bases of res judicata, collateral estoppel, and an earlier-filed parallel proceeding. Dennis Doc. 59. In support, Defendants ask the Court to take judicial notice of various court filings in three prior proceedings and one ongoing proceeding pursuant to Rule 201 of the Federal Rules of Evidence. Dennis Doc. 62. Appel also moves to dismiss separately under Rule 12(b)(2) for lack of personal jurisdiction. Dennis Doc. 64.

### A.    Appel's Motion to Dismiss (Dennis Doc. 64).

Appel moves to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, arguing that he has no minimum contacts with Arizona. Dennis Doc. 64. Appel resides and works in New York, owns no property in Arizona, was physically present in Arizona for one business meeting approximately 20 years ago and possibly once as a tourist, and has never acted as an employee or agent of RRC or CWT Canada. *See* Dennis Doc. 65 ¶¶ 3, 5-10.

#### 1.    Legal Standard.

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the

plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). The Court may not assume the truth of allegations in a pleading that are contradicted by an affidavit, but factual disputes are resolved in Plaintiff's favor. *Id.*

### 2.    Analysis.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citation omitted). Arizona has authorized its courts to exercise jurisdiction to the maximum extent permitted by the Due Process Clause of the U.S. Constitution. *See* Ariz. R. Civ. P. 4.2(a). Thus, the Court may exercise jurisdiction over a defendant who is not physically present in Arizona if the defendant has minimum contacts with the State, such that the suit can be maintained without offending traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Court may assert "general" personal jurisdiction over a defendant whose activities in the forum are substantial or continuous and systematic, even if the plaintiff's claims are unrelated to those activities. *See Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1289, 1287 (9th Cir. 1977)). Alternatively, "specific" personal jurisdiction can be established when the defendant purposely directed conduct at the forum, the claim arises out of the defendant's forum-related activities, and the exercise of jurisdiction comports with fair play and substantial justice. *Mavrix Photo*, 647 F.3d at 1227-28. The first requirement of specific jurisdiction – purposeful direction – can be satisfied in a tort case when a defendant (1) commits an intentional act, (2) expressly aimed at the forum, (3) which causes foreseeable harm in the forum. *Id.* This test is sometimes referred to as the "effects test." *Id.*[6]

---

[6] The FAC asserts fraud and negligent misrepresentation claims against Appel.

The effects test does not "stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 675 (9th Cir. 2012) (citation and quotation marks omitted). Nor does the effects test mean that specific jurisdiction may be based solely on a defendant's knowledge that the subject of his tortious activity resides in a particular state. *See Walden*, 134 S. Ct. at 1125. "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.*

Plaintiffs do not argue that the Court has general personal jurisdiction over Appel, nor could they, given that he does not have substantial or continuous and systematic contacts with Arizona. *See Haisten*, 784 F.2d at 1396. Accordingly, the Court will consider only whether it has specific jurisdiction.

Plaintiffs argue that Appel's initiation of "phone calls and meetings" with RDX, a company with its principal place of business in Arizona, "constitute intentional acts for the purposes of the effects test." Dennis Doc. 71 at 5, 12. Plaintiffs assert that the alleged misrepresentations Appel made during these calls and meetings were expressly aimed at Arizona because "Appel must surely have known that the consequences of his wrongful conduct would be felt in Arizona." *Id.* Plaintiffs cite *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002), and *Bancroft & Masters, Inc. v. Augusta National, Inc.*, 223 F.3d 1082 (9th Cir. 2000), for the proposition that the "'express aiming' requirement is met when 'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" Dennis Doc. 71 at 5 (quoting *Bancroft & Masters*, 223 F.3d at 1087).

But, as Appel correctly points out, following *Walden*, 134 S. Ct. 1115, it is clear that "personal jurisdiction does not exist merely because a person directs tortious conduct at another whom he knows resides in a particular state." *Premier Funding Grp. LLC v. Aviva Life & Annuity Co.*, No. CV-14-01633-PHX-DGC, 2014 WL 6885732, at *4 (D.

Dennis Doc. 49 at 22-23. The contract-based claims are asserted only against CWT Canada and RRC. *Id.* at 23-24.

-14-

Ariz. Dec. 8, 2014). As this Court has previously explained, the Ninth Circuit's reasoning in *Dole* and *Bancroft* cited by Plaintiffs is simply not consistent with the Supreme Court's decision in *Walden*. *Id.* Post-*Walden* cases from the Ninth Circuit confirm that "the defendant's suit-related conduct must create a substantial connection with the forum State," not simply with a plaintiff who resides there. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1146 (9th Cir. 2017) (quoting *Walden*, 134 S. Ct. at 1121).

Plaintiffs have alleged only that Appel directed tortious conduct at an entity that he knew had its principal place of business in Arizona. This is insufficient to show that he committed an intentional act specifically aimed at Arizona. Plaintiffs have therefore failed to make a prima facie case that the Court has personal jurisdiction over Appel. The Court will grant Appel's motion to dismiss for lack of personal jurisdiction.[7]

**B.     Motion for Judicial Notice (Dennis Doc. 62).**

In the context of a Rule 12(b)(6) motion to dismiss, the Court may properly consider matters of public record outside the pleadings without converting the motion to one for summary judgment. *Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279 (9th Cir. 1986*), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *see also Houston v. Ariz. St. Bd. of Educ.*, CV-10-8160-PHX-GMS, 2012 WL 466474, at *2 n. 3 (D. Ariz. Feb. 14, 2012) (noting that "[a] court may take judicial notice of 'matters of public record outside the pleadings'") (citation omitted). Accordingly, the Court will take judicial notice of the documents from the four court proceedings.[8]

---

[7] Because the claims against Appel are dismissed on personal jurisdiction grounds, the term "Defendants," as used in the remainder of this opinion, refers only to CWT Canada, RRC, Noelting, and MacFarlane.

[8] Plaintiffs oppose Defendants' request to the extent it asks the Court to take judicial notice of the "findings of fact within [the prior actions]" as opposed to the fact "that the actions occurred." Dennis Doc. 70 at 2. But Defendants have not made such a request. The Court takes notice of the prior proceedings for the purpose of evaluating Defendants' arguments based on the existence of the other proceedings, not for the purpose of establishing the truth of factual findings in those proceedings. *See Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001) ("On a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'") (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999)).

Defendants also ask the Court to consider the contract governing RDX's acquisition of CWT LP, referred to by the parties as the Unit Purchase Agreement ("UPA").  *See* Dennis Docs. 62, 60-7.  Plaintiffs refer to the UPA extensively in the FAC, it is central to their claims, and no party disputes the authenticity of the copy submitted by Defendants.  *See* Dennis Doc. 49 ¶¶ 61-78, 105-06, 120, 122, 126, 128, 131, 134, and 136.  The Court accordingly will consider it.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (noting that courts may take into account documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading").

### C.  Defendants' Motion to Dismiss (Dennis Doc. 59).

Defendants argue that Plaintiffs' claims are barred by the doctrine of res judicata – also referred to as claim preclusion – because Plaintiffs raised them or could have raised them in the New York Action.  Dennis Doc. 59 at 9.

"It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *accord Ayers v. City of Richmond*, 895 F.2d 1267, 1270 (9th Cir. 1990).  Under the doctrine, "a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter.  The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation."  *In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005).  Under New York's "transactional analysis approach . . . , once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy."  *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981).  The doctrine "'is applicable to an order or judgment entered upon default that has not been vacated, as well as to issues that were or could have been raised in the prior proceeding.'"  *Yardeny v. Jordan*, 988 N.Y.S.2d 658, 659 (App. Div. 2014) (quoting *Allstate Ins. Co. v. Williams*, 816 N.Y.S.2d 497 (App. Div. 2006)).  And "although New York does not have a compulsory counterclaim rule, 'a party

is not free to remain silent in an action in which he is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory[.]'" *Santiago v. Lalani*, 681 N.Y.S.2d 577, 578 (App. Div. 1998). "The policy against relitigation of adjudicated disputes is strong enough to bar a second action or proceeding even when further investigation indicates that the prior determination was erroneously made, whether due to the parties' oversight or court error." *Allstate*, 816 N.Y.S.2d at 498.

In *Santiago*, for example, the first action was brought by Lalani against Santiago and sought damages for wrongful acts related to Santiago's financial management of Lalani's medical practice. 681 N.Y.S.2d at 577. Lalani obtained a default judgment in the first action. Santiago moved to vacate the judgment, and submitted a proposed answer that included three counterclaims. After the court denied his motion, Santiago brought a new suit against Lalani which sought damages for breach of contract and fraud related to his management of the medical practice. The court affirmed dismissal of the new suit based on res judicata, finding that the allegations in the new claims were "essentially the same as those in the [proposed] counterclaims" in the first suit, and the claims "clearly ar[ose] out of the same agreement to manage" the medical practice that was at issue in the first suit. *Id.* at 578. The court concluded: "Santiago's present claims are barred by the doctrine of res judicata as they could have been raised as defenses in the [first action] and, if accepted, would impair Lalani's rights established in that action." *Id.*

Determining whether Plaintiffs' claims are barred thus requires examination of the nature of the New York Action and the claims Plaintiffs now seek to assert in the FAC.

### 1. The New York Action.

The New York Action was instituted in 2013 in the Supreme Court for the State of New York, New York County, by a third party, GEM Holdco., LLC, against Plaintiffs, Defendants,[9] and others. *See* Dennis Doc. 60-9. GEM's suit challenged RDX's then-

---

[9] It appears that MacFarlane was not initially named as a party in the New York Action, but was added as a defendant in GEM's third amended complaint, is referenced throughout Defendants' crossclaims in the New York Action, and is mentioned in at least one court order as playing a role in the case as "RRC's director." *See* Dennis Doc. 60-11

pending acquisition of CWT LP pursuant to the UPA. *Id.* The acquisition proceeded, and Plaintiffs ultimately settled with GEM, but the suit continued when Defendants brought crossclaims against Plaintiffs in September 2014 for, inter alia, breach of trust and conversion. *See* Dennis Doc. 60-11 at 7; Dennis Doc. 60-12 at 43-44.[10]

In a section titled "Danzik's And RDX's Breaches of the UPA," the crossclaim alleges that "Danzik caused RDX to breach virtually all of its material obligations under the UPA." Dennis Doc. 60-12 at 30. Among other breaches, the crossclaim alleges that Plaintiffs refused to make payments on the $20 million note they signed to fund the acquisition, and wrongfully withheld millions of dollars in tax credits received by CWT LP, which belonged to Defendants under the UPA. *Id.*

In December 2015, Defendants moved for a preliminary injunction to prohibit Plaintiffs from using or transferring the CWT LP tax credits and to require them to deposit the tax credits into a separate trust account, or alternatively for an attachment order in the amount of $3,175,967. Dennis Doc. 60-15. In that motion, Defendants explained Plaintiffs' position that the tax credits were not legitimately earned because CWT LP committed fraud on the federal government in order to obtain them. *Id.* at 11. They explained: "Whether the Tax Credit Funds are the property of [Defendants] is the subject of both this action and the one in Alberta, and [Plaintiffs] have no right to engage in self-help by dissipating those funds until the issue is resolved." *Id.* In opposition to the motion, Plaintiffs argued that the UPA allowed them to keep the tax credits as a setoff for the harm caused by Defendants' fraud in entering into the UPA. *See* Dennis Doc. 60-4. The New York Court granted Defendants' motion and ordered Plaintiffs to place the tax credits into a separate account until ordered otherwise. Dennis Doc. 60-16. Judge Kornreich explained that there was "no question of fact that the $3,175,967 in tax credits do not belong to [Plaintiffs]. The money either belongs to the CWT parties or the federal

---

at 4; Dennis Doc. 60-12. Plaintiffs do not raise this issue or argue that it alters the res judicata analysis with respect to MacFarlane.

[10] In August 2014, when Defendants allege "it was clear to Danzik that [Defendants] were about to [bring the crossclaims] for the breaches of the UPA[,]" Plaintiffs instituted the Canada Action. Dennis Doc. 60-12 at 34. References to "Danzik" in the New York action and in this discussion of the litigation are to Dennis.

government. . . . [R]egardless of the outcome of this litigation, [Plaintiffs] will not keep the money." *Id.* at 6.

Although Plaintiffs never answered the crossclaim, they did move to dismiss in February 2015. *See* Dennis Doc. 60-13. In their motion to dismiss, Plaintiffs argued that (1) the crossclaims were subject to the UPA's forum selection clause, which required disputes "arising out of or relating to" the UPA to be litigated in Alberta, and (2) the New York forum did not have personal jurisdiction over Plaintiffs. *Id.* Defendants later filed a motion to strike these defenses based on Plaintiffs' noncompliance with discovery orders. *See* Dennis Doc. 60-18 at 3.

At a hearing on November 4, 2015, Judge Kornreich granted the motion to strike Plaintiffs' defenses. *See* Dennis Doc. 60-19 at 3-4 ("I am striking Mr. Danzik and RDX's, any kind of response they have to [the crossclaim]. There is no answer to that, no opposition to that. There is going to be a default on that if there is a motion for a default judgment."). This ruling was based on Plaintiffs' repeated refusal to comply with court orders to produce certain bank records and ESI during discovery. *Id.* at 3-5 ("If this Court's orders are ignored repeatedly, we can't have a viable court system. And, as I said earlier, it is not just disrespect for the Court . . . It is the fact that the Court can't enforce any order or any judgment if it is totally ignored."). Plaintiffs' counsel was present at the hearing and specifically argued that the crossclaims were barred by the forum selection clause and that the court lacked jurisdiction. *See* Dennis Doc. 60-21 at 3-7. Judge Kornreich ruled that Plaintiffs were subject to personal jurisdiction in New York and that the crossclaim could proceed in New York despite the forum selection clause. *Id.*

On June 3, 2016, after considering the parties' briefings and holding a contempt hearing, Judge Kornreich found Plaintiffs in civil and criminal contempt for violating the attachment order and a later granted temporary restraining order requiring Plaintiffs to set aside the tax credits. Dennis Doc. 60-22. The order notes that the night before Plaintiffs' cross-examination of the sole witness at the contempt hearing was scheduled to begin, Plaintiffs filed for bankruptcy, Dennis in Wyoming and RDX in Arizona. *Id.* at 5. Dennis did not appear in court the next day. *Id.* After concluding that the institution of the

bankruptcy proceedings did not deprive the court of its ability to hold Plaintiffs in contempt for past conduct, Judge Kornreich proceeded to the merits and found that there was "no question that [Plaintiffs] willfully violated the Attachment Order and the TRO." *Id.* at 9. The order describes the violations in detail, and ultimately offers Dennis the opportunity to purge his contempt by paying the full amount of the tax credits, approximately $6 million, by June 21, 2016. *Id.* at 13-16. After Plaintiffs failed to cure their contempt, the court issued a contempt order and warrant for Dennis's arrest on September 14, 2016. Dennis Doc. 60-23.

In August 2016, Judge Kornreich issued a written order granting Defendants' unopposed motion for default judgment against Plaintiffs on their crossclaims. Dennis Doc. 60-2.[11] In assessing whether Defendants had a viable cause of action against Plaintiffs for purposes of entering default judgment, the court explained that the breach of trust crossclaim "concerns [Plaintiffs'] breach of their obligation to hold the tax credits in constructive trust for [Defendants], as required by the UPA." *Id.* at 5-6. The Court concluded that Defendants' "right to the tax credits under the UPA is clear, and any defense RDX may have had has been stricken." *Id.* at 6. A final judgment was entered the following month against Dennis and RDX in the amount of $7,033,491.13. Dennis Doc. 60-3.

### 2. The FAC.

The FAC asserts claims for fraud, negligent misrepresentation, breach of contract, and breach of the implied warranty of good faith and fair dealing, all based on the UPA and associated negotiations. *See* Dennis Doc. 49. Essentially, Plaintiffs allege that they were defrauded into entering into the UPA based on representations made by Defendants in the UPA or during negotiations surrounding the UPA. *Id.*

/ / /

/ / /

---

[11] The motion for default was originally filed in November 2015, but Judge Kornreich said she was delayed in deciding the motion because of "[Plaintiffs'] dilatory tactics . . ., such as filing for bankruptcy on the eve of oral argument . . . and the continuation of the contempt hearing." Dennis Doc. 60-2 at 4.

### 3.    Analysis.

The claims in the FAC plainly arise out of the same transaction as the crossclaims in the New York Action – the UPA.  Plaintiffs could have raised these claims in the New York Action because they arise out of the very same factual circumstances that New York court was already considering.  Plaintiffs' attempt to re-characterize the issues in the FAC as distinct from the issues in the New York Action is entirely unpersuasive.  *See* Dennis Doc. 72 at 7.  Regardless of how the issues are characterized, they "aris[e] out of the same transaction or series of transactions" as the New York crossclaims.  *O'Brien*, 429 N.E.2d at 1159.  That Plaintiffs did not raise these affirmative claims in the New York Action is irrelevant, because they clearly "could have" raised them.  *Yardeny*, 988 N.Y.S.2d at 659.

Moreover, as explained above, that the final judgment in the New York Action was a default judgment is of no consequence.  *Yardeny*, 988 N.Y.S.2d at 659; *see also Richter v. Sportsmans Props., Inc.*, 918 N.Y.S.2d 511, 513 (App. Div. 2011) ("Entry of an order pursuant to CPLR 3126 striking an answer is the equivalent of a default in answering," and a "judgment by default which has not been vacated is conclusive for res judicata purposes.").  Plaintiffs cite various cases holding that dismissals for discovery violations were not judgments on the merits for res judicata purposes.  Dennis Doc. 72 at 7-8 (citing, *e.g.*, *Maitland v. Trojan Elec. & Mach. Co.*, 480 N.E.2d 736 (N.Y. 1985); *Aguilar v. Jacoby*, 827 N.Y.S.2d 77 (App. Div. 2006); *DeRonda v. Greater Amsterdam Sch. Dist.*, 458 N.Y.S.2d 310 (App. Div. 1983)).  In those cases, the plaintiffs were permitted to bring the same cause of action a second time because their first actions were dismissed without prejudice based on procedural grounds.  *See Maitland*, 480 N.E.2d 736 (first action dismissed because plaintiffs failed to answer interrogatories within 30 days as required by court order, but court "did not indicate whether its order was on the merits" and the case was not dismissed "with prejudice"); *Aguilar*, 827 N.Y.S.2d 77 (first action dismissed because plaintiffs failed to comply with discovery requests and court orders, and failed to respond to defendants' motion to dismiss, but the dismissal "was not preceded by an order of preclusion and there was no indication that the dismissal was with prejudice"); *DeRonda*, 458 N.Y.S.2d 310 (first action dismissed because plaintiff failed to fulfill

statutory condition precedent to suit within time prescribed by court order, but plaintiff subsequently fulfilled the requirement within the statutory time period).

Here, the New York court explicitly entered a judgment against Plaintiffs on the merits of Defendants' crossclaims. *See* Dennis Docs. 60-2; 60-3. Judge Kornreich did not simply dismiss the case without prejudice based on discovery violations, like the cases cited by Plaintiffs. She entered a final judgment on the merits, which has res judicata effect in New York. *See Tromba v. E. Fed. Sav. Bank, FSB*, 48 N.Y.S.3d 501, 502 (App. Div. 2017) ("A judgment of default which has not been vacated is conclusive for res judicata purposes, and encompasses the issues which were raised or could have been raised in the prior action.").

Plaintiffs argue that the New York judgment does not have preclusive effect because the New York court found that Plaintiffs would not be entitled to the tax credits even if they proved Defendants' alleged fraud. Dennis Doc. 72 at 8. Plaintiffs cite *Johnston v. Unexcelled, Inc.*, 345 N.Y.S.2d 1, 3 (App. Div. 1973), which explained that "a determination that the matter pleaded did not constitute a defense to the claim asserted by the plaintiff is not a holding that those same facts would not constitute an independent claim in favor of the defendant against the plaintiff." But the basis for res judicata is not that the New York court ruled on and rejected the claims Plaintiffs now assert in this case; it is that the claims in this case could have been asserted in the New York Action and were not. Plaintiffs were "not free to remain silent in [the New York Action] and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory[.]" *Santiago*, 681 N.Y.S.2d at 578. Plaintiffs allowed the New York Action to come to a final conclusion without attempting to bring their counterclaims, and may not bring them now in this Court. What is more, in *Johnston*, the lower court first struck the defenses and then prohibited defendants from pleading them as counterclaims. *Id.* In other words, the defendants in *Johnston* never had an opportunity to raise their counterclaims. Here, Plaintiffs could have pled their defenses as counterclaims in the New York Action, but chose not to.

Even if Plaintiffs argue that the New York court erred or that newly discovered evidence renders the New York judgment erroneous, the Court cannot rehear their claims. New York's "policy against relitigation of adjudicated disputes is strong enough to bar a second action or proceeding even when further investigation indicates that the prior determination was erroneously made, whether due to the parties' oversight or court error." *Allstate*, 816 N.Y.S.2d at 498. It appears that Plaintiffs recognize that their recourse lies in the New York court, as they assert that they "are currently working to overturn that default judgment based on . . . newly acquired evidence" and "plan to file a motion there shortly." Dennis Doc. 72 at 6.

The FAC will be dismissed because all of the claims it asserts are barred by res judicata.

### 4.      Defendants' Other Arguments.

Although the Court need not address Defendants' additional arguments, the Court notes that there is a compelling argument that this Court should dismiss based on international comity, in favor of allowing these claims to proceed in the Canada Action. *See* Dennis Doc. 59 at 14-15 (citing *Thornton Tomasetti, Inc. v. Anguillan Dev. Corp.*, No. 14-CV-7040 JPO, 2015 WL 7078656 (S.D.N.Y. Nov. 13, 2015)).[12]

"International comity is a doctrine of prudential abstention, one that 'counsels voluntary forbearance when a sovereign which has a legitimate claim to jurisdiction concludes that a second sovereign also has a legitimate claim to jurisdiction under principles of international law.'" *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014) (quoting *United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 8 (1st Cir.1997)). Adjudicatory comity "may be viewed as a discretionary act of deference by a national court to decline to exercise jurisdiction in a case properly adjudicated in a foreign state." *Mujica*, 771 F.3d at 599. When a case is already pending in a foreign court, "'deference

---

[12] Defendants also seem to argue that this Court should dismiss based on the "first-to-file" rule. *See* Dennis Doc. 59 at 14-15 (citing *Horner v. Youghiogheny Commc'ns, L.L.C.*, No. CV 05-3800-PHX-NVW, 2006 WL 1328803 (D. Ariz. May 12, 2006)). But Defendants cite no authority holding that the first-to-file rule applies to cases filed in foreign jurisdictions.

to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States.'" *Id.* (quoting *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005)). In determining whether to dismiss based on comity, courts evaluate the United States' interests, the strength of the foreign government's interests, and the adequacy of the foreign forum. *Mujica*, 771 F.3d at 603.

The Court finds it appropriate for these claims to be litigated in Canada given that Plaintiffs themselves filed the Canada Action long before they filed this action, the claims in the Canada Action are essentially identical to those in this action, *see* Dennis Doc. 60-8, many of the parties involved are Canadian, and, as Plaintiffs argued in both the Canada Action and the New York Action, the parties "agreed to an exclusive and mandatory forum selection clause conferring jurisdiction upon the courts of Alberta" for claims "arising out of or relating to" the UPA. *See* Dennis Doc. 60-13 at 16-21; Dennis Doc. 60-8 at 3. Moreover, Plaintiffs present no evidence to suggest that the Canadian court lacks jurisdiction or is an inadequate forum. Plaintiffs should not get a third chance to litigate their claims, which they could have raised in the New York Action and have raised in the first-filed Canada Action.

**IT IS ORDERED:**

1.     The motion to dismiss Tony Ker's original counterclaim (Doc. 86 in CV16-2577) is **denied as moot**.

2.     The motion to dismiss Tony Ker's second amended counterclaim, filed by CWT Canada II Limited Partnership and Research Recovery Corporation (Doc. 107 in CV16-0607), is **granted** with respect to the abuse of process claim and **denied** with respect to the defamation claim.

3.     The motion to dismiss the amended complaint filed by Brian Appel (Doc. 64 in CV17-0969) is **granted**.

4.     The motion for judicial notice filed by CWT Canada II Limited Partnership, Research Recovery Corporation, Jean Noelting, and Bruce MacFarlane (Doc. 62 in CV17-0969) is **granted**.

5.     The motion to dismiss the amended complaint filed by CWT Canada II Limited Partnership, Research Recovery Corporation, Jean Noelting, and Bruce MacFarlane (Doc. 59 in CV17-0969) is **granted**.

6.     The Clerk is directed to **terminate** Case No. CV-17-0969-PHX-DGC.

Dated this 26th day of January, 2018.

_David G. Campbell_
David G. Campbell
United States District Judge