**WILENCHIK & BARTNESS**
—A PROFESSIONAL CORPORATION—

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810   Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
David A. Timchak, #032095
Craig W. Broadbent, #029032
Fabian Zazueta, #032687
admin@wb-law.com
*Attorneys for Defendants Elizabeth Danzik,*
*Deja II, LLC, Richard Carrigan, Tony Ker, and Danzik Applied Sciences*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| CWT Canada II Limited Partnership, an Ontario, Canada Limited Partnership; and Resource Recovery Corporation, a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>Kevin J. Bridges, an Arizona citizen; Jane Doe Bridges, an Arizona citizen; Richard Carrigan, a citizen of Nevada; Jane Doe Carrigan, a citizen of Nevada; and Danzik Applied Sciences, LLC, a Delaware Limited Liability Company,<br><br>Defendants.<br><br>**And all related claims.** | Case Nos.: 2:16-cv-00607-DGC<br>2:16-cv-02577-GMS (Consolidated)<br>2:17-cv-00969-JAT (Consolidated)<br><br>**DEFENDANTS RICHARD CARRIGAN, ANTONY KER, AND DANZIK APPLIED SCIENCES, L.L.C.'S CONTROVERTING STATEMENT OF FACTS AND SEPARATE STATEMENT OF FACTS IN SUPPORT OF RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br>**AND**<br>**DEFENDANTS RICHARD CARRIGAN, ANTONY KER, AND ELIZABETH DANZIK'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Defendants Antony Ker ("Ker"), Richard Carrigan ("Carrigan"), Danzik Applied Sciences, LLC ("DAS"), and Defendant/Counterclaimant Elizabeth J. Danzik ("Elizabeth") (collectively, "Defendants") hereby provide their Controverting Statement of Facts and Separate Statement of Facts in support of their Response to Plaintiff CWT Canada II Limited Partnership and Resource Recovery Corporation's (collectively, the "CWT Parties") Motion for Summary Judgment [Doc. 156], and Defendants' Cross-Motion for Summary Judgment.

**CONTROVERTING STATEMENT OF FACTS**

1. Admitted.

2. Admitted.

3. Admitted.

4. Defendants deny that the named persons "jointly and affirmatively" decided to withhold the funds, and object to the quoted language as ambiguous and undefined. (Declaration of Richard Carrigan ["Carrigan Decl."] ¶ 9, and Declaration of Tony Ker ["Ker Decl."] ¶ 27.)

5. Defendants deny that the named persons "jointly" decided to commingle the funds, and object to the quoted language as ambiguous and undefined. Defendants affirmatively allege that, because CWT concedes that the subject funds were commingled, CWT's claim based on conversion of money must fail. (Carrigan Decl. ¶ 10 and Ker Decl. ¶ 28.)

6. Admitted.

7. Defendants submit that the document speaks for itself. Defendants affirmatively allege that Carrigan has denied any recollection of the document. (Carrigan Decl. ¶ .)

8. Defendants submit that the document speaks for itself. Defendants affirmatively allege that Carrigan has denied any specific recollection of the document. (Carrigan Decl. ¶ 8.)

9. Ker admits the statement. Carrigan has denied any specific recollection of the document. (Carrigan Decl. ¶ 8.)

10. Denied. (Carrigan Decl. ¶ 11 and Ker Decl. ¶ 29.)

11. Denied. (Carrigan Decl. ¶ 11 and Ker Decl. ¶ 29.)

12. Admitted.

13. Admitted.

14. Admitted.

15. Admitted.

16. Admitted.

17. Admitted.

2

18. Admitted.

19. Admitted.

20. Admitted.

21. Admitted.

22. Admitted.

23. Admitted.

24. Admitted.

25. Admitted.

26. Admitted.

27. Denied. Defendants affirmatively allege that this statement is vague and ambiguous, and inaccurate. (Ker Decl. ¶ 30.)

28. Admitted.

29. Denied. Defendants affirmatively allege that Ker worked with Danzik and for RDX on the GEM litigation, but was not involved to the same degree regarding defense of the cross-claims in the New York case. (Ker Decl. ¶ 31.)

30. Admitted.

31. Admitted.

32. Admitted. Defendants affirmatively allege that Ker later investigated Blazar's statements and found that a substantial amount of her information was untrue. (Ker Decl. ¶ 32.)

33. Admitted.

34. Admitted.

35. Admit that CWT was seeking documents. Defendants affirmatively allege that Ker worked with Danzik and for RDX on the GEM litigation, but was not involved to the same degree regarding defense of the cross-claims in the New York case, and also that Ker was not then aware that CWT had paid off Blazar, who had hidden key documents. (Ker Decl. ¶ 33.)

36. Admitted. Defendants affirmatively allege that that Ker later learned that CWT had paid off Blazar, who had hidden key documents. (Ker Decl. ¶ 34.)

37. Admitted.

38. Admitted. Defendants affirmatively allege that that Ker later learned that CWT had paid off Blazar, who had hidden key documents. (Ker Decl. ¶ 34.)

39. Admitted.

40. Admitted. Defendants affirmatively allege that Ker was not during that time significantly involved in or aware of the details of the lawsuit. (Ker Decl. ¶ 35.)

41. Denied. Defendants affirmatively allege that Ker was not during that time significantly involved in or aware of the details of the lawsuit, and later learned that CWT had paid off Blazar, who had hidden key documents. (Ker Decl. ¶ 36.)

42. Admit that CWT made the filing. Deny that Ker was "managing …. the litigation alone," and affirmatively allege that Ker was not during that time significantly involved in or aware of the details of the lawsuit. (Ker Decl. ¶ 37.)

43. Admitted.

44. Admit discussion. Defendants affirmatively allege that Ker is not certain who approached whom. (Ker Decl. ¶ 38.)

45. Admitted.

46. Admitted.

47. Admitted.

48. Admitted.

49. Admitted.

50. Admitted.

51. Defendants have no knowledge or information to admit or deny this allegation, and therefore deny the allegation and leave the CWT Parties to their proof.

52. Defendants have no knowledge or information to admit or deny this allegation, and therefore deny the allegation and leave the CWT Parties to their proof.

53. Defendants have no knowledge or information to admit or deny this allegation, and therefore deny the allegation and leave the CWT Parties to their proof.

54. Defendants have no knowledge or information to admit or deny this allegation, and therefore deny the allegation and leave the CWT Parties to their proof.

55. Defendants have no knowledge or information to admit or deny this allegation, and therefore deny the allegation and leave the CWT Parties to their proof.

56. Defendants have no knowledge or information to admit or deny this allegation, and therefore deny the allegation and leave the CWT Parties to their proof.

## SEPARATE STATEMENT OF FACTS

**Ker Declaration**

1. Between 2008 and 2013, Ker served as chief operating officer ("CEO") of RDX. (Ker Decl. ¶ 2.)

2. As CEO, his responsibilities included, but were not limited to, daily communications with the chief financial officer ("CFO"), maintenance of market relationships with investors, and other general corporate management functions. (*Id.* ¶ 3.)

3. In March 2013, he was appointed chairman the board of directors of RDX, a position that he maintained until May 2014. (*Id.* ¶ 4.)

4. As chairman of the board, Ker's primary job responsibility included facilitating the relationship between RDX and CWT and CWT's Jean Noelting. (*Id.* ¶ 5.)

5. At no time was Ker responsible for overseeing the detailed day-to-day operations of RDX. (*Id.* ¶ 6.)

6. Ker was also tasked with reviewing and approving RDX invoices. (*Id.* ¶ 7.)

7. Specifically, he would discuss invoices with RDX CFO, Kevin Bridges ("Bridges"), to determine whether expenses occurred or transactions were reported properly. (*Id.* ¶ 8.)

8. At all times, Ker relied on Bridges to ensure payment was made on all invoices from different parties and vendors. (*Id.* ¶ 9.)

9. Throughout Ker's tenure as chairman of RDX, the board of directors regularly reviewed reports that were generated by RDX's auditors. (*Id.* ¶ 10.)

10. It was Ker's understanding and belief that the auditor's duty and ensuing reports were meant to, and generally did, identify transactions that merited closer review. (*Id.* ¶ 11.) But those reports never stated, or were understood by Ker to suggest, that something illegal or improper had occurred. (*Id.*)

11. On or about July 29, 2014, the board received an audit report regarding a transaction between RDX and DAS. The report specifically made general reference to "related party transactions." (*Id.* ¶ 12.) Specifically, the report simply stated:

> Related Party Transactions
>
> We noted that the Company enters into various transactions with multiple related parties in the normal course of business for which there is very limited documentation of the business purpose retained. Under the terms of certain related party agreements, the board of directors my audit the source transactions; however, to date that right has not been exercised. Such transactions must be reviewed and approved by the Company's board of directors and adequate documentation retained in the Company's books and records. In addition, such transactions should be disclosed properly in the Company's consolidated financial statements. It is imperative that the board of directors increase their oversight over related party transactions.

(*Id.*)

12. Notably, this does not specifically reference the RDX contract with DAS. (*Id.* ¶ 13.)

13. After receiving this report, Ker spoke to Bridges to ensure that the transactions and monitoring were done appropriately under the agreement between RDX and DAS. (*Id.* ¶ 14.)



14. The board did investigate, and neither the board nor the auditor found any improprieties regarding these transactions. (*Id.* ¶ 15.)

15. Ker does not recall that the auditor ever filed an objection or did not sign off on the related financials. (*Id.* ¶ 16.)

16. Ker was one of the only people in management that was actually familiar with the work DAS did for RDX for which DAS was paid. (*Id.* ¶ 17.)

17. In that regard, Ker observed, as to DAS' work, the manufacturing in the facilities, the installation on-site, and the quality of work and equipment on the sites where the related equipment was installed. (*Id.* ¶ 18.)

18. At no time was Ker responsible for making payments to DAS, and nor was he in a position to do so, because Blazar and Bridges were, at all relevant times, responsible for remitting payment using RDX funds. (*Id.* ¶ 19.)

19. Specifically, Ker never directed the remittance of the tax credit monies to DAS, which was done by Bridges and Blazar. (*Id.* ¶ 20.)

20. He did, however, approve various invoices and confirmed whether payments were made on the same. (*Id.* ¶ 21.)

21. It was also Ker's understanding and belief that the federal tax credit funds were not required to be in a segregated account, and those monies were deposited into RDX's operational account when they were received. (*Id.* ¶ 22.)

22. A majority of the work involving the New York litigation, including regarding litigation strategy and participation, was done by Danzik and Blazar, together with RDX's New York counsel. (*Id.* ¶ 23.)

23. Ker was aware of the New York lawsuit, assisted in it when asked and to the degree that he was able to, but played no substantive role in it. (*Id.* ¶ 24.)

24. Ker's only substantial participation in the New York case was to discuss with RDX's attorneys his recollection of events that occurred. (*Id.* ¶ 25.)

25. Ker was never named as a party to any of CWT's claims and was dismissed as a party in the New York case entirely prior to those claims ever being filed. (*Id.* ¶ 26.)

26. Regarding CWT's Statement of Fact No. 4, Ker denies that the named persons "jointly and affirmatively" decided to withhold the funds. (*Id.* ¶ 27.)

27. Regarding CWT's Statement of Fact No. 5, Ker denies that the named persons "jointly" decided to commingle the funds. (*Id.* ¶ 28.)

28. Regarding CWT's Statement of Fact Nos. 10 and 11, Ker denies the contents of any such conversation with Bridges. (*Id.* ¶ 29.)

29. Regarding CWT's Statement of Fact No. 27, Ker submits that this statement is vague and ambiguous, and inaccurate. (*Id.* ¶ 30 )

30. Regarding CWT's Statement of Fact No. 29, Ker worked with Danzik and for RDX on the GEM litigation, but was not involved to the same degree regarding defense of the cross-claims in the New York case. (*Id.* ¶ 31.)

31. Regarding CWT's Statement of Fact No. 32, Ker later investigated Blazar's statements and found that a substantial amount of her information was untrue. (*Id.* ¶ 32.)

32. Regarding CWT's Statement of Fact No. 35, Ker worked with Danzik and for RDX on the GEM litigation, but was not involved to the same degree regarding defense of the cross-claims in the New York case, and Ker was not then aware that CWT had paid off Blazar, who had hidden key documents. (*Id.* ¶ 33.)

33. Regarding CWT's Statement of Fact Nos. 36 and 38, Ker later learned that CWT had paid off Blazar, who had hidden key documents. (*Id.* ¶ 34.)

34. Regarding CWT's Statement of Fact No. 40, Ker was not during that time significantly involved in or aware of the details of the lawsuit. (*Id.* ¶ 35.)

35. Regarding CWT's Statement of Fact No. 41, Ker was not during that time significantly involved in or aware of the details of the lawsuit, and later learned that CWT had paid off Blazar, who had hidden key documents. (*Id.* ¶ 36.)

8

36.    Regarding CWT's Statement of Fact No. 42, Ker did not "manage[] … the litigation alone," and was not during that time significantly involved in or aware of the details of the lawsuit. (*Id.* ¶ 37.)

37.    Regarding CWT's Statement of Fact No. 44, Ker is not certain who approached whom. (*Id.* ¶ 38.)

**Carrigan Declaration**

38.    Carrigan served as a director of RDX from mid-2012 through the first quarter of 2014. (Carrigan Decl. ¶ 2.)

39.    He was always an outside director, was never an officer or manager of RDX, and at all relevant times resided in another state. (*Id.* ¶ 3.)

40.    Carrigan's primary function as a director was as a member of the audit committee, and to review and approve quarterly audit reports. (*Id.* ¶ 4.)

41.    He does not recall that he attended all meetings of the board of directors, and has no specific recollection of personally approving payment of any of the tax credit funds to Danzik or any of Danzik's companies. (*Id.* ¶ 5.)

42.    Carrigan never received any payments from the tax credit funds. (*Id.* ¶ 6.)

43.    During his first few months of service as a director, Carrigan was paid $1,000.00 per month, and nothing thereafter. (*Id.* ¶ 7.)

44.    When the audit report recommending closer scrutiny of transactions involving Danzik and any of his companies was provided to RDX, in late July of 2014, it was in the final quarter of Carrigan's service as a director, and Carrigan does not recall it. (*Id.*) Carrigan denies that he discussed the auditor's warnings with Bridges. (*Id.*) Carrigan was not aware of, was dismissed early as a party to, and never participated in or controlled the New York lawsuit, as he left the company in the third quarter of 2014. (*Id.*)

45.    Regarding CWT's Statement of Fact No. 4, Carrigan denies that the named persons "jointly and affirmatively" decided to withhold the funds. (*Id.* ¶ 9.)

9

46. Regarding CWT's Statement of Fact No. 5, Carrigan denies that the named persons "jointly" decided to commingle the funds. (*Id.* ¶ 10.)

47. Regarding CWT's Statement of Fact Nos. 10 and 11, Carrigan denies the contents of any such conversation with Bridges. (*Id.* ¶ 11.)

**Timchak Declaration**

48. On August 28, 2014, the judge in the New York case dismissed the sole claim against Carrigan and Ker, which claim was made by a non-party to this litigation. (Declaration of Davit Timchak ["Timchak Decl."] ¶ 15.)

49. A majority of the work involving the New York litigation, including regarding litigation strategy and participation, was done by Danzik and Blazar, together with RDX's New York counsel. (*Id.* ¶ 14.)

50. In the New York lawsuit, the court entered a default judgment and struck the defendants' defenses based on the non-production of documents in discovery. (*Id.* ¶ 16.)

51. It was learned thereafter that the documents in question had been hidden by RDX employee Blazar, who was then assisting CWT and who is now employed by an entity affiliated with CWT. (*Id.* ¶ 8.)

52. On June 14, 2018, Danzik filed in the New York case a Memorandum of Law in Support of a Motion to Vacate the Judgment, based on actions of Blazer in hiding the necessary discovery documents and information from the cross-defendants so that they could not be produced in compliance with the court's orders. (*Id.* ¶ 8.)

53. Blazar volunteered to head the discovery process on behalf of Danzik and RDX; ("From June 2014, and to late summer 2015, I assisted RDX with sorting, copying, and labeling a substantial amount of court discovery evidence, that was gathered, and managed by Candie Blazar … Candie Blazar was the lead person, and she directed everyone including me on how she wanted the data organized for the file boxes.") (*Id.* ¶ 14.)

54. Ker has stated that the responsibility of sending the discovery to New York legal counsel was Blazar's, who at the time was the CFO for RDX and had direct access to all of the discovery documents. (*Id.* ¶ 8.)

55. Blazar has admitted that she had access to all of the documents, servers, and ESI requested, and there is no evidence to dispute that she secreted away the necessary documents and computer equipment. (*Id.* ¶ 8.)

56. RDX and Danzik's lack of access to these materials, and inability to produce them, was the cause of the default judgment. (*Id.* ¶ 8.)

**DATED** this 22nd day of August, 2018.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik, Esq.*
Dennis I. Wilenchik, Esq.
David A. Timchak, Esq.
Craig W. Broadbent, Esq.
Fabian Zazueta, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
*Attorneys for Defendants Elizabeth Danzik, Deja II, LLC, Richard Carrigan, Tony Ker, and Danzik Applied Sciences*

# CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2018, the following was served on all registered parties via ECF and I emailed the attached document to the following individuals:

J. Hendrik Taylor, Esq.
Andrew Charles Pacheco, Esq.
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 N. Central Avenue, Suite 1600
Phoenix, Arizona 85012
htaylor@rrulaw.com
apacheco@rrulaw.com
*Attorneys for Plaintiffs*

Bradley J. Nash, Esq.
Jeffrey M. Eilender, Esq.
Vitali S. Rosenfeld, Esq.
Joshua Wurtzel, Esq.
**SCHLAM STONE & DOLAN, LLP**
26 Broadway, Suite 1900
New York, New York 10004
jeilender@schlamstone.com
bnash@schlamstone.com
vrosenfeld@schlamstone.com
jwurtzel@schlamstone.com
*Attorneys for Plaintiffs*

Dennis L. Hall, Esq.
**DENNIS L. HALL, ATTORNEY, PLLC**
3033 North Central, Suite 810
Phoenix, Arizona 85012
Telephone: 480.596.4045
dennis@dlhall.net
*Attorneys for Defendant Kevin J. Bridges*

Leo R Beus, Esq.
Timothy J. Paris, Esq.
**Beus Gilbert PLLC**
701 N 44th St.
Phoenix, AZ 85008
LBeus@beusgilbert.com
tparis@beusgilbert.com
*Attorneys for Danzik Applied Sciences, LLC, RDX Technologies, LLC, Dennis M. Danzik, Richard Carrigan, Tony Ker, Elizabeth Danzik*

*/s/ Lisa Marquez*