J. Henk Taylor (016321)
**RYAN RAPP & UNDERWOOD, P.L.C.**
3200 N. Central Ave, Suite 2250
Phoenix, Arizona 85012
Telephone: (602) 280-1000
Facsimile: (602) 265-1495
E-Mail: htaylor@rrulaw.com

Jeffrey M. Eilender (*admitted pro hac vice*)
Bradley J. Nash (*admitted pro hac vice*)
Joshua Wurtzel (*admitted pro hac vice*)
**SCHLAM STONE & DOLAN LLP**
26 Broadway
New York, New York 10004
Telephone: (212) 344-5400
Facsimile: (212) 344-7677
E-Mail: jeilender@schlamstone.com
E-Mail: bnash@schlamstone.com
E-Mail: jwurtzel@schlamstone.com

*Attorneys for Plaintiffs CWT Canada II*
*Limited Partnership and Resource Recovery*
*Corporation*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| CWT Canada II Limited Partnership, an Ontario, Canada Limited Partnership; and Resource Recovery Corporation, a Delaware Corporation,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>Elizabeth J. Danzik, an individual; and Deja II, LLC, an Arizona Limited Liability Company<br>　　　　　　　Defendants. | Case Nos.: 2:16-cv-00607-PHX-DGC<br>　　　　　　2:16-cv-02577-PHX-DGC<br><br>**REPLY IN FURTHER SUPPORT OF CWT PARTIES' MOTION FOR SUMMARY JUDGMENT AGAINST KER AND CARRIGAN AND OPPOSITION TO DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**Oral Argument Requested** |
| And related claims. | |

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 5

I.    KER AND CARRIGAN FAIL TO REFUTE THE CWT PARTIES'
SHOWING THAT THEY ARE LIABLE FOR CONVERSION ................. 5

    A.  Ker and Carrigan Cannot Escape Liability Based on a Technical Pleading
Defect, Because They Have Known That the CWT Parties Were Pursuing
Claims for Conversion Against Them Since the Beginning of This Case ..... 6

    B.  Alternatively, This Court Should Deem the CWT Parties' Complaint
Amended to Conform to the Undisputed Evidence Showing That Ker and
Carrigan Are Liable for Conversion ............................................................. 8

        1.  The Undisputed Evidence Shows That Ker and Carrigan Are Liable
for Conversion as a Matter of Law ....................................................... 10

        2.  Ker and Carrigan Cannot Show That Allowing the CWT Parties to
Amend Their Complaint to Conform to the Undisputed Evidence
Would Prejudice Them ......................................................................... 11

    C.  In Any Event, The Evidence Shows That Ker and Carrigan Are Liable for
Aiding and Abetting RDX's Conversion of the Tax Credits ...................... 12

II.    KER AND CARRIGAN FAIL TO REFUTE THE CWT PARTIES'
SHOWING THAT ALL THEIR DEFENSES TO THE CWT PARTIES'
CONVERSION CLAIM FAIL ................................................................... 14

    A.  Ker and Carrigan Fail to Refute the CWT Parties' Showing That Res
Judicata and Collateral Estoppel Preclude Them From Asserting the New
York Action Defenses ................................................................................. 14

    B.  Ker and Carrigan Are Precluded From Asserting Defenses Based on the
Economic Loss Doctrine or Absence of "Identified Funds" ....................... 16

    C.  Ker and Carrigan Fail to Refute the CWT Parties' Showing That Under the
UPA, RDX Owed the Tax Credits to the CWT Parties and Was Not
Entitled to Retain Them Even if the CWT Parties Defrauded It ................. 17

III.   KER FAILS TO DISPUTE THE CWT PARTIES' SHOWING THAT HIS
DEFAMATION COUNTERCLAIM FAILS BECAUSE IT IS BARRED
BY THE LITIGATION PRIVILEGE .......................................................... 18

IV.   THIS COURT SHOULD DENY DEFENDANTS' CROSS MOTION
FOR SUMMARY JUDGMENT ................................................................. 18

    A.  Defendants Fail to Show That They Are Entitled to Summary Judgment on
the CWT Parties' Claims for Breach of Trust and Breach of Fiduciary
Duty, and Aiding and Abetting These Torts ............................................... 19

B.  Defendants Fail to Show That They Are Entitled to Summary Judgment on the CWT Parties' Claims for a Constructive Trust Against Elizabeth.... 21

C.  Defendants Fail to Show That They Are Entitled to Summary Judgment on the CWT Parties' Claims for an Accounting from Elizabeth ................. 21

CONCLUSION ............................................................................................................. 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiffs CWT Canada II Limited Partnership and Resource Recovery Corporation (collectively, the "CWT Parties") submit this memorandum of points and authorities in (1) further support of their motion for summary judgment under Fed. R. Civ. P. 56(a) on (a) their conversion claim against Defendants Tony Ker ("Ker") and Richard Carrigan ("Carrigan") related to the stolen tax credits, (b) all Ker's and Carrigan's defenses to this claim, and (c) Ker's defamation counterclaim; (2) support of their motion for this Court to, if necessary, deem the CWT Parties' Second Amended Complaint (Bridges Dkt. No. 56) amended to include a conversion claim against Ker and Carrigan; and (3) opposition to Ker's, Carrigan's, and Defendant Elizabeth J. Danzik's ("Elizabeth") cross motion for summary judgment (Dkt. No. 165). The CWT Parties also submit the Eilender Opposition Declaration ("Eilender Opp. Decl.") in opposition to Ker's, Carrigan's, and Elizabeth's cross motion.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

In their opening brief, the CWT Parties showed that under Arizona law, a corporate director who "**votes for the commission of a tort is personally liable**, even though the wrongful act is performed in the name of the corporation." *Arizona Tile, LLC v. Berger*, 223 Ariz. 491, 496 (Ariz. Ct. App. 2010) (emphasis added). Here, as the CWT Parties showed in their opening brief, Ker and Carrigan are liable for conversion as a matter of law based on two undisputed facts: (1) the New York court held that RDX converted the tax credits from the CWT Parties by wrongfully withholding them, and (2) Ker and

---

[1] References to "Dkt. No." are to docket entries in the action captioned *CWT Canada II Limited Partnership, et al., v. Danzik, et al.*, No. 2:16-cv-00607. References to "Bridges Dkt. No." are to docket entries in the action captioned *CWT Canada II Limited Partnership et al., v. Bridges, et al.*, No. 2:16-cv-02577. References to "Dennis Dkt. No." are to the action captioned *Danzik, et al., v. CWT Canada II Limited Partnership, et al.*, No. 2:17-cv-00969.

Carrigan affirmatively authorized RDX to withhold the tax credits. The first fact is conclusive here, because—as explained in the CWT Parties' opening brief and below—Ker and Carrigan are in privity with RDX, and are thus precluded from challenging this factual finding. And the second fact is undisputed by the record here, and shows that Ker and Carrigan are personally liable for RDX's conversion as primary tortfeasors (and not as aiders and abettors) as a matter of law—because under Arizona law, a corporate director is personally liable for the corporation's conversion as a primary tortfeasor if he "participate[s]" in the conversion by voting for or approving it. *Bellas Artes De Mexico, Inc. v. Argento LLC*, 2017 WL 6459826, at *6 (Ariz. Ct. App. Dec. 19, 2017).

In opposition, Ker and Carrigan rely almost exclusively on a technicality about the CWT Parties' complaint—that the complaint asserts a claim against them only for aiding and abetting conversion, rather than for conversion itself. And according to Ker and Carrigan, aiding and abetting conversion requires a higher mental state than conversion itself, so they should escape liability for affirmatively authorizing RDX to withhold the tax credits from the CWT Parties—which the New York court conclusively and preclusively held was a conversion.

But Ker and Carrigan ignore that "'[a] party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.'" *Busker v. Wabtec Corp.*, 2018 WL 4233068, at *2 (9th Cir. Sept. 6, 2018) (citation omitted). And as explained below, Ker and Carrigan have been on notice that the CWT Parties were pursuing a conversion claim against them since the beginning of this case, and they will not be prejudiced by allowing the complaint to be amended to conform to the undisputed evidence showing that they are liable for conversion.

Alternatively, this Court should deem the complaint amended to include a claim against Ker and Carrigan for conversion. Indeed, the "'underlying purpose of Rule 15'"—

which requires that leave to amend a pleading be freely granted—is to "'facilitate decisions on the merits, rather than on the pleadings or technicalities'" (*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted), *quoted in Tobias v. United States Dep't of Justice*, 2017 WL 2417047, at *5 (D. Ariz. Mar. 2, 2017)). And the Ninth Circuit recently held that under Fed. R. Civ. P. 15(b)—which applies here instead of Rule 16(b)— the court should permit a party to amend its pleading to conform to the evidence submitted on summary judgment. *See Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014) ("[w]here plaintiffs 'fail[] to raise [a claim] properly in their pleadings," if they "raised it in their motion for summary judgment, they should [be] allowed to incorporate it by amendment under Fed. R. Civ. P. 15(b),'" even if summary judgment motion is made after amendment deadline in Rule 16 order) (alterations in original) (citation omitted). Indeed, in *Desertrain*, the Ninth Circuit did exactly what the CWT Parties ask this Court to do here—deem the complaint amended to include a claim supported by the undisputed evidence and grant summary judgment on that claim. And as a further alternative if the Court prefers a separate motion for leave to amend, the Court should deny the CWT Parties' summary judgment motion without prejudice, the CWT Parties will bring a separate motion for leave to amend to assert a conversion claim against Ker and Carrigan, and then the CWT Parties will renew their motion for summary judgment on this claim. In any event, this Court should not allow Ker and Carrigan to escape liability for conversion—when the undisputed evidence establishes their liability— on a pleading technicality

Further, in their opening brief, the CWT Parties showed that res judicata and collateral estoppel preclude Ker and Carrigan from asserting any of the New York Action Defenses here, which include that (1) the CWT Parties defrauded RDX into entering into the UPA; (2) RDX was entitled to retain the tax credits, either because of the CWT

-3-

Parties' alleged fraud or because of the terms of the UPA; (3) RDX and Dennis did not convert the tax credits; (4) RDX was not required to keep the tax credits it received in a segregated account, or RDX was permitted to spend the tax credits upon receipt; and (5) the CWT Parties' tort claims are barred by the economic loss doctrine.

Ker and Carrigan do not dispute any of the CWT Parties' arguments about why res judicata and collateral estoppel apply—including the CWT Parties' showing that res judicata applies to issues and defenses, rather than just whole claims. Instead, Ker's and Carrigan's sole argument concerning preclusion is that they are not in privity with RDX because neither of them "'controlled' the New York litigation" or its "outcome." But while the record shows that at least Ker controlled much of the New York Action, the Court need not reach this issue, because control over a litigation is just one way—not the only way—for privity to exist. Indeed, even if Ker and Carrigan did not control the New York Action, under New York law, privity exists because RDX represented their interests as directors when it defended itself in the New York Action. *See Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 743 (N.Y. 1970) (privity extends to parties "'who control an action although not formal parties to it,'" ***and*** "'those whose interests are represented by a party to the action'"). And this is so because the actions that RDX was defending—its decision to withhold the tax credits from the CWT Parties—are the exact actions for which the CWT Parties seek to hold Ker and Carrigan liable here. So RDX's defense of its (*i.e.*, Ker's and Carrigan's) actions in the New York Action was necessarily a defense of Ker's and Carrigan's actions on its behalf.

Moreover, Ker and Carrigan do not dispute the CWT Parties' showing that even if Ker and Carrigan are not precluded from asserting the New York Action Defenses (they are), their defense that RDX was entitled to retain the tax credits—either because of the CWT Parties' alleged fraud or because of the terms of the UPA—fails as a matter of law.

So this is an independent basis on which this Court can grant summary judgment on these defenses.

Further, Ker does not oppose the CWT Parties' motion for summary judgment on his defamation counterclaim. Indeed, in their opening brief, the CWT Parties showed that, according to the undisputed evidence, all the allegedly-defamatory statements were made in the context of litigation, and are thus protected by the litigation privilege. Ker does not oppose this argument; submits no evidence refuting it; and either admits, or denies knowledge or information about, the facts that support it. Thus, this Court should grant summary judgment dismissing this claim.

Finally, Defendants' cross motion for summary judgment should be denied. Defendants not only fail to submit a Statement of Undisputed Facts in support of this motion as required by Local Rule 56.1—which is itself a basis to deny the motion—but as explained below, also fail to show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law on the CWT Parties' claims.

## ARGUMENT

### I.    KER AND CARRIGAN FAIL TO REFUTE THE CWT PARTIES' SHOWING THAT THEY ARE LIABLE FOR CONVERSION

In their opening brief, the CWT Parties showed that Ker and Carrigan are liable for RDX's conversion of the tax credits because (1) the New York court held that there is "no question of fact that the tax credits belong to the CWT Parties," and that RDX "indisputably" "wrongfully withheld" the tax credit checks from the CWT Parties—which Ker and Carrigan are precluded from challenging; and (2) Ker and Carrigan affirmatively authorized RDX to withhold the tax credits from the CWT Parties. *See Arizona Tile, LLC*, 223 Ariz. at 496 ("[a] director who actually votes for the commission of a tort is personally liable, even though the wrongful act is performed in the name of the

corporation"). Dkt. No. 156 at 11-13.

In opposition, Ker and Carrigan argue they cannot be held liable for conversion because, in their complaint, the CWT Parties assert only a claim for *aiding and abetting* conversion against them, rather than for conversion itself. According to Ker and Carrigan, "[a]n actionable conversion may occur notwithstanding a person's lack of tortious intent and even if an action is undertaken in good faith," while aiding and abetting requires the "defendant's knowledge of the underlying tort." Dkt. No. 165 at 9-12. And so Ker and Carrigan argue that they should escape liability for conversion on this basis, and that this motion should thus be denied. But Ker and Carrigan err.

### A. Ker and Carrigan Cannot Escape Liability Based on a Technical Pleading Defect, Because They Have Known That the CWT Parties Were Pursuing Claims for Conversion Against Them Since the Beginning of This Case

"'A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.'" *Busker*, 2018 WL 4233068, at *2 (citation omitted).

Ker and Carrigan have been on notice that the CWT Parties were pursuing claims against them for conversion since the beginning of this case. Indeed, in their motion to disqualify Wilenchik & Bartness, P.C. from representing Carrigan—which the CWT Parties made on May 17, 2017, before discovery began in earnest and before Ker was even added as a defendant—the CWT Parties argued that Carrigan was liable for the "theft of the Tax Credits, since under Arizona law, 'corporate directors may be held personally liable for **conversion** done in the name of a corporate' if they 'participate or have knowledge amounting to acquiescence or be guilty of negligence in the management and supervision of the corporate affairs causing or contributing to the injury.'" Bridges Dkt. No. 54 at 11 (emphasis added).

And the CWT Parties reiterated this argument in their June 16, 2017 reply in

further support of their disqualification motion (Bridges Dkt. No. 70 at 5), and again in their February 9, 2018 motion to strike (Dkt. No. 128 at 13), and again in their February 27, 2018 reply in further support of their motion to strike (Dkt. No. 136 at 7 ("Ker and Carrigan are liable because they caused RDX to deposit and use the CWT Parties' tax credits—which was **conversion**") (emphasis added) (citation omitted)).

Further, Ker's and Carrigan's counsel attended the depositions of RDX's auditor—Squar Milner—and former director—Kevin Bridges—and heard the CWT Parties' counsel ask hours of questions about the warnings that Squar Milner and Bridges gave to Ker and Carrigan about their lack of oversight of Dennis's related-party transactions with RDX. And Ker's and Carrigan's counsel cross examined both witnesses about these issues. Ker and Carrigan thus cannot now claim that they did not know that these issues were part of this case. *See Sagana v. Tenorio*, 384 F.3d 731, 736 (9th Cir. 2004) ("one party's pursuit of discovery on an issue put[s] the opposing party on notice of the issue").

Moreover, the CWT Parties asserted claims against Ker and Carrigan for breach of fiduciary duty. Bridges Dkt. No. 56 ¶¶ 131-39. And since breach of fiduciary duty against a director may be proved by showing that the director was negligent or reckless in carrying out his duties—regardless of intent—Ker and Carrigan were on notice that they could be held liable on regardless of their tortious intent.

Thus, regardless of how the CWT Parties technically pleaded their claims, Ker and Carrigan have known since the beginning of this case that the CWT parties were pursuing them for conversion. And so Ker and Carrigan cannot escape liability for conversion by relying on a technical pleading defect. *See Busker*, 2018 WL 4233068, at *2 (although plaintiff raised breach of contract theory for first time on summary judgment, court should have addressed claim on the merits because complaint could "fairly be read as containing the factual basis for a breach of contract claim"); *Rother v. Lupenko*, 515 F. App'x 672,

674 (9th Cir. 2013) (although complaint "did not spell out" plaintiff's unpaid-break claims in "so many words," defendants had "sufficient notice of those claims," and so—because a party "need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case"—district court properly considered unpaid-break claim on summary judgment).

### B. Alternatively, This Court Should Deem the CWT Parties' Complaint Amended to Conform to the Undisputed Evidence Showing That Ker and Carrigan Are Liable for Conversion

While a formal amendment to the complaint is not necessary (as explained above), alternatively, this Court should deem the CWT Parties' complaint amended to include a conversion claim against Ker and Carrigan. And as explained above, if the Court prefers a separate motion for leave to amend, the Court should deny the CWT Parties' summary judgment motion without prejudice, the CWT Parties will bring a separate motion for leave to amend to assert a conversion claim against Ker and Carrigan, and then the CWT Parties will renew their motion for summary judgment on this claim.[2]

Under Fed. R. Civ. P. 15(b), a party may move during and even after trial to amend its pleading to conform to the evidence. The Ninth Circuit interprets this rule broadly, and allows for amendments under it to be made on summary judgment as well: indeed, the Ninth Circuit recently held that "[w]here plaintiffs 'fail[] to raise [a claim] properly in their pleadings," if they "raised it in their motion for summary judgment, they should [be] allowed to incorporate it by amendment under Fed. R. Civ. P. 15(b).'" *Desertrain*, 754 F.3d at 1154 (alterations in original) (citation omitted); *see also Jackson v. Hayakawa*, 605 F.2d 1121, 1129 (9th Cir. 1979) (because they raised unpled claim in their motion for summary judgment, plaintiffs "should have been allowed to incorporate it by amendment

---

[2] Even if the Court ultimately denies the CWT Parties' renewed summary judgment motion, or even if the Court does not permit the CWT Parties to renew their summary judgment motion, the Court should still allow the CWT Parties to amend their complaint to include a conversion claim against Ker and Carrigan at trial.

under Fed. R. Civ. P. 15(b)").

While a party must normally also show good cause under Fed. R. Civ. P. 16(b) to modify a scheduling order—like the one here, which set December 13, 2017 as the deadline for amending the pleadings (Dkt. No. 102 ¶ 2)—this is not so when a party seeks to conform the pleadings to the evidence at trial (or, as the Ninth Circuit has extended the rule, on summary judgment) under Rule 15(b). *See Desertrain*, 754 F.3d at 1154 (applying only Rule 15(b)—and not Rule 16(b)—to amendment on summary judgment motion even though summary judgment motion was made months after the deadline for amending the pleadings under Rule 16 order); *see also Am. Family Mut. Ins. Co. v. Hollander*, 705 F.3d 339, 350 (8th Cir. 2013) (court's denial of motion for leave to amend under Rule 16(b) for lack of good cause "is not to say the pleadings could not be amended to conform them to the evidence presented at trial" under Rule 15(b)).

And even if good cause were necessary (it is not), the CWT Parties have satisfied it here. Indeed, the CWT Parties' counsel did not discover the Arizona cases defining the elements of a primary liability for conversion by a director until after the complaint was filed, and did not formally amend it before now because—despite repeatedly citing cases and making arguments about why Ker and Carrigan would be liable for conversion as primary tortfeasors—Ker and Carrigan never raised any issue with the CWT Parties' pursuit of this claim. And if the CWT Parties are unable to pursue a conversion claim now, they would be substantially prejudiced, given that—as explained in the opening brief and below—the undisputed evidence shows that Ker and Carrigan affirmatively authorized RDX to convert the tax credits, and are thus liable for conversion.

Under Rule 15(b)—which applies here—"'[l]eave to amend shall be freely given when justice so requires, and this policy is to be applied with extreme liberality.'" *Desertrain*, 754 F.3d at 1154 (citations omitted). Indeed, "'this mandate is to be heeded'"

(*GRK Holdings, LLC v. First Am. Title Ins. Co.*, 2010 WL 3940575, at \*9 (D. Ariz. Oct. 6, 2010) (Campbell, J.) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)))—especially given that the "'underlying purpose of Rule 15'" is to "'facilitate decisions on the merits, rather than on the pleadings or technicalities'" (*Lopez*, 203 F.3d at 1127 (citation omitted)).

As explained below, this Court should deem the CWT Parties' complaint amended to conform to the undisputed evidence showing that Ker and Carrigan are liable for conversion as a matter of law, or should at least allow the CWT Parties to make a separate motion for leave to amend and to then renew their summary judgment motion.

### 1. The Undisputed Evidence Shows That Ker and Carrigan Are Liable for Conversion as a Matter of Law

As the CWT Parties showed in their opening brief (Dkt. No. 156 at 11-13), the New York court conclusively—and preclusively—held that RDX converted the tax credits by withholding them from the CWT Parties. *See* Dennis Dkt. No. 60-16 at 6; Dennis Dkt. No. 60-22 at 14 n.13. And Ker and Carrigan do not dispute this.

The undisputed evidence also shows that Ker and Carrigan affirmatively authorized RDX to withhold the tax credits from the CWT Parties. *See* 56.1 ¶ 4; Dkt. No. 129-4 at 272:14-24 (Dennis bankruptcy testimony); Dkt. No. 129-2 at 250:4-12, 252:23-253:10 (Ker testimony); Bridges Decl. ¶ 7. Indeed, Ker does not—and cannot—dispute this. And Carrigan does not dispute this either, but argues only that he was "never aware of any decisions to pay out the tax credit funds," and that the CWT Parties have "no evidence that he attended any critical board meetings when the board expressly considered and/or acted on such matters." Dkt. No. 165 at 11-12 (emphasis omitted). But as the CWT Parties showed in their opening brief, Dennis, Ker, and Bridges all testified ***without contradiction*** that Carrigan affirmatively authorized RDX to withhold the tax credits. *See* Dkt. No. 156

at 8 n.2-4 (compiling testimony); 56.1 ¶¶ 4-5. And Carrigan's testimony that he doesn't remember this decision is not enough to create a genuine dispute of material fact. *See Derderian v. Sw. & Pac. Specialty Fin., Inc*., 673 F. App'x 736, 738 (9th Cir. 2016) (nonmovant's testimony that she "does 'not recall'" is "not enough to create a genuine dispute" of material fact). Thus, Ker and Carrigan are liable as a matter of law for RDX's conversion of the tax credits. *See Arizona Tile, LLC*, 223 Ariz. at 496 ("[a] director who actually votes for the commission of a tort is personally liable, even though the wrongful act is performed in the name of the corporation").

Moreover, as Ker and Carrigan concede (Dkt. No. 165 at 9), "good faith belief or intention is no defense to a conversion claim" against corporate directors. *Sports Imaging of Arizona, L.L.C. v.1993 CKC Tr.*, 2008 WL 4448063, at *13 (Ariz. Ct. App. Sept. 30, 2008). So Ker and Carrigan should not be able to escape liability by relying on "technicalities" in the complaint. *Lopez*, 203 F.3d at 1127.

### 2. Ker and Carrigan Cannot Show That Allowing the CWT Parties to Amend Their Complaint to Conform to the Undisputed Evidence Would Prejudice Them

As explained above, Ker and Carrigan have been on notice that the CWT Parties were pursuing claims for conversion against them since the beginning of this case—and thus cannot claim surprise.

Ker and Carrigan also cannot show that they would be prejudiced by this amendment. Specifically, Ker and Carrigan cannot show that they would have taken any additional discovery had the CWT Parties asserted a conversion claim against them from the outset. Indeed, there is no meaningful dispute that Ker and Carrigan affirmatively authorized RDX to withhold the tax credits, and any further evidence of Ker's and Carrigan's mental state or actions would come from *Ker* and *Carrigan* themselves—who were deposed and submitted declarations in opposition to this motion. *See* Dkt. Nos. 167-

68; *see also Desertrain*, 754 F.3d at 1154 (amendment at summary judgment permitted when claim sought to be added "did not require further discovery"). Indeed, Ker and Carrigan substantively oppose the CWT Parties' motion for summary judgment on the conversion claim (rather than just an aiding and abetting claim), and do not claim that they need additional discovery to oppose it. Dkt. No. 165 at 12-13; *see also Desertrain*, 754 F.3d at 1154 (amendment at summary judgment permitted when parties "fully argued" claim sought to be added in their "summary judgment briefings").

Further, Ker and Carrigan vigorously opposed the CWT Parties' motion to quash their subpoenas to Candy Blazar, David Bogardus, and Brian Appel—yet even after this Court denied the CWT Parties' motion to quash, **Ker and Carrigan never bothered to take these depositions**. So Ker and Carrigan cannot now complain that they would have taken more discovery when they did not even bother to take the discovery they fought to get.

### C. In Any Event, The Evidence Shows That Ker and Carrigan Are Liable for Aiding and Abetting RDX's Conversion of the Tax Credits

*First*, as explained above, the New York court's holdings—which as explained in the CWT Parties' opening brief (*id.* at 13-23), Ker and Carrigan are precluded from challenging—establish that RDX converted the tax credits.

*Second*, as also explained above, the undisputed evidence shows that Ker and Carrigan affirmatively authorized RDX to withhold the tax credits from the CWT Parties.

*Third*, the undisputed evidence shows that Ker and Carrigan had knowledge of the acts RDX took to convert the tax credits, *i.e.*, withholding them from the CWT Parties, because Ker and Carrigan affirmatively authorized those acts.

Ker and Carrigan erroneously argue that to be liable for aiding and abetting conversion, they had to know that a "tort was being committed" by RDX when they

authorized RDX to withhold the tax credits. But their liability does not turn on whether they literally knew that they were assisting RDX to take an action that was tortious; instead, it turns on whether they knew that they were assisting RDX to withhold the tax credits from the CWT Parties—which the New York court already held was conversion as a matter of law. *See Torrance Const., Inc. v. Jaques*, 127 A.D.3d 1261, 1263 (N.Y. App. Div. 3rd Dep't 2015) ("A claim can exist for aiding and abetting conversion if the aider-abettor has actual knowledge that the person who directly converted the plaintiff's property did not own that property."); 56.1 ¶ 23 (New York court holding that "there is no question of fact" that the tax credits "do not belong to" Dennis or RDX, that the tax credits "either belong[] to the CWT Parties or the federal government," and that "[n]o matter" RDX's "liquidity needs," it is "not entitled to use this money because, regardless of the outcome of this litigation," RDX will "not keep the money").

Further, Ker erroneously argues that he cannot be liable for aiding and abetting conversion because he was "never advised that the transactions between RDX and DAS on that contract were improper or tortious." Dkt. No. 165 at 11. And Carrigan erroneously argues that he cannot be liable for aiding and abetting conversion because "never intended to act tortiously himself," and thus "could not possibly be found conclusively to have aided and abetted torts committed by Danzik or DAS." *Id.* These arguments ignore that Ker and Carrigan are liable for aiding and abetting ***RDX's*** conversion of the tax credits—not just Dennis's and DAS's conversion. *See* Bridges Dkt. No. 56 ¶ 141 (CWT Parties alleging that Ker and Carrigan are liable for "aiding and abetting Danzik's and/or RDX's commission" of, among other things, "conversion"). And as explained above, RDX's intentional withholding of the tax credits was conversion by ***RDX***, and Ker and Carrigan aided and abetted ***RDX's*** conversion by authorizing RDX to withhold the tax credits.

## II. KER AND CARRIGAN FAIL TO REFUTE THE CWT PARTIES' SHOWING THAT ALL THEIR DEFENSES TO THE CWT PARTIES' CONVERSION CLAIM FAIL

### A. Ker and Carrigan Fail to Refute the CWT Parties' Showing That Res Judicata and Collateral Estoppel Preclude Them From Asserting the New York Action Defenses

In their opening brief, the CWT Parties showed that Ker and Carrigan are precluded from asserting the New York Action Defenses. Specifically, the CWT Parties showed that res judicata precludes Ker and Carrigan from asserting these defenses because res judicata bars relitigation of specific issues and defenses (like the New York Action Defenses)—not just whole claims; because RDX raised or could have raised all these defenses in the New York Action; and because Ker and Carrigan are in privity with RDX, since they were RDX directors when RDX converted the tax credits and RDX represented their interests by defending their actions in the New York Action. The CWT Parties also showed that collateral estoppel precludes Ker and Carrigan from asserting these defenses because the New York court—after contested hearings in which RDX participated—repeatedly and specifically rejected these defenses (except for economic loss, which was never raised). Dkt. No. 156 at 13-23.

In opposition, Ker and Carrigan do not dispute that res judicata bars relitigation of specific issues and defenses, like the New York Defenses, and not just whole claims. *See Sterling Doubleday Enterprises, L.P. v. Marro*, 238 A.D.2d 502, 503 (N.Y. App. Div. 2nd Dep't 1997) (defendant corporate officers' and directors' **"affirmative defenses"** were "barred by the doctrine[] of res judicata" when the corporation that these officers and directors served had a previous default judgment against it arising out of the same transaction or occurrence; *see also CIBC Mellon Tr. Co. v. HSBC Guyerzeller Bank AG*, 56 A.D.3d 307, 308 (N.Y. App. Div. 1st Dep't 2008) (because of a default in a prior case, res judicata barred defendants' **"affirmative defense** of unclean hands"). And so Ker and

1
2
3

Carrigan concede this. *See Gurasich v. IBM Ret. Plan*, 2016 WL 362399, at *4 (N.D. Cal. Jan. 29, 2016) (defendants "concede" what they "do not dispute").

4
5
6

In opposition, Ker and Carrigan also do not dispute that RDX raised or could have raised the New York Action Defenses in the New York Action. And so Ker and Carrigan also concede this.

7
8
9
10

In opposition, Ker and Carrigan also do not dispute that the New York court—after contested hearings in which RDX participated—repeatedly and specifically rejected the New York Action Defenses other than economic loss. And so Ker and Carrigan also concede this.

11
12
13

Thus, Ker and Carrigan concede that—if they are in privity with RDX—then res judicata and collateral estoppel preclude them from asserting the New York Action Defenses.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Concerning privity, Ker's and Carrigan's sole argument is that neither of them "'controlled' the New York litigation" or its "outcome." Dkt. No. 165 at 16. But Ker and Carrigan ignore that control over a litigation is just one way—not the only way—for privity to exist. Indeed, separate and apart from whether a party controlled a prior litigation, privity exists between a party in an action and "those whose interests are represented by a party to the action." *Watts*, 265 N.E.2d at 743. And because there is an "'identity of interests and close relationship'" between a corporation and its directors and officers, "[c]ourts have found corporate directors and officers in privity with corporate defendants." *U.S. Secs. & Futures Corp. v. Irvine*, 2002 WL 34191506, at *4 (S.D.N.Y. May 13, 2002) (citation omitted); *see also Tesla Wall Sys., LLC v. Related Companies, L.P.*, 2017 WL 6507110, at *5 n.3 (S.D.N.Y. Dec. 18, 2017) (privity exists between "corporate entities and their directors"); *JSC Sec., Inc. v. Gebbia*, 4 F. Supp. 2d 243, 251 (S.D.N.Y. 1998) ("'corporations and their officers and directors are in privity for purposes

-15-

of res judicata'") (citation omitted).

Indeed, while the record shows that at least Ker controlled the New York Action on RDX's behalf—despite Ker's unsupported denials—privity exists here **regardless** of whether Ker and Carrigan controlled the New York Action. *See N. Am. Foreign Trading Corp. v. Chiao Tung Bank*, 1997 WL 193197, at *5 (S.D.N.Y. Apr. 18, 1997) (default judgment against one party precluded second party in privity, even though second party did not cause first party to default, and first party was "on the verge of bankruptcy and hence lacked the resources to pursue a lawsuit to its conclusion"). This is so because the basis for privity here is that Ker and Carrigan, as directors, controlled **RDX's decision to deposit and use the tax credits**—which is what RDX defended in the New York Action—and so RDX represented Ker's and Carrigan's interests in the New York Action because RDX's defense of its actions in the New York Action was necessarily a defense of Ker's and Carrigan's actions on its behalf. *See* Dkt. No. 156 at 18-19.

And since Ker and Carrigan do not dispute that they were RDX directors when RDX converted the tax credits, or that RDX represented their interests by defending their actions in the New York Action, they necessarily concede that the undisputed evidence shows that they are in privity with RDX—and can thus be precluded to the same extent as RDX.

### B. Ker and Carrigan Are Precluded From Asserting Defenses Based on the Economic Loss Doctrine or Absence of "Identified Funds"

As explained in the CWT Parties' opening brief (Dkt. No. 156 at 13-14) and above, res judicata applies to both "'issues that were'" raised, or issues that "'could have been raised,'" in "'the prior proceeding.'" *Yardeny v. Jordan*, 118 A.D.3d 985, 985 (N.Y. App. Div. 2nd Dep't 2014) (emphasis added) (citation omitted).

Ker and Carrigan argue that the CWT Parties' conversion claim is barred by the

1
2
3
4
5
6

economic loss rule, because "CWT alleges only economic damages arising out of its contractual relationship with Danzik and RDX." Dkt. No. 165 at 14. Ker and Carrigan also argue that "[b]ecause the only provision of the UPA regarding the tax credits, Section 2.3, contained no segregation term, and because the subject funds were not so segregated, there are no 'identified' funds to support a conversion claim for money." *Id.* at 12.

7
8
9
10
11

But Ker and Carrigan ignore that RDX could have raised both defenses in the New York Action in response to the CWT Parties' claim against RDX for conversion. *See* Dennis Dkt. No. 60-12 ¶¶ 161-64. Thus, res judicata would bar RDX from asserting this defense now, and since Ker and Carrigan are in privity with RDX, res judicata bars them too.

12
13
14

### C. Ker and Carrigan Fail to Refute the CWT Parties' Showing That Under the UPA, RDX Owed the Tax Credits to the CWT Parties and Was Not Entitled to Retain Them Even if the CWT Parties Defrauded It

15
16
17
18
19
20
21
22
23
24
25

In their opening brief, the CWT Parties showed that even if Ker and Carrigan are not precluded from asserting the New York Action Defenses (they are), their defense that RDX was entitled to retain the tax credits—either because of the CWT Parties' alleged fraud or because of the terms of the UPA—fails as a matter of law. Specifically, the CWT Parties showed that under the UPA and as the New York court held, the CWT Parties were indisputably entitled to the tax credits, and RDX indisputably had no right to withhold the tax credits, either as a "set-off" or otherwise. The CWT Parties also showed that even if RDX's allegations that the CWT Parties defrauded it into entering into the UPA were true (they are not), RDX still would not be entitled to the tax credits, because they belonged either to the CWT Parties or to the federal government—not to RDX. Dkt. No. 156 at 23-25.

26
27
28

Ker and Carrigan "do not dispute," and "therefore concede" this. *Gurasich*, 2016 WL 362399, at *4. And so this is an independent basis on which this Court can grant

1
2

summary judgment on these defenses.

**III.    KER FAILS TO DISPUTE THE CWT PARTIES' SHOWING THAT HIS DEFAMATION COUNTERCLAIM FAILS BECAUSE IT IS BARRED BY THE LITIGATION PRIVILEGE**

3
4
5

In their opening brief, the CWT Parties showed that, according to the undisputed

6

evidence, all the allegedly-defamatory communications that Noelting and MacFarlane had

7

about Ker are protected by the litigation privilege, because they were at counsel's

8

instruction, and either (i) in preparation for Dennis's and RDX's contempt hearing, or

9

(ii) in furtherance of settlement talks. The CWT Parties also showed that Ker even

10

admitted in his deposition that these allegedly-defamatory communications were made in

11

connection with litigation. Dkt. No. 156 at 25-27.

12
13

In opposition, Ker does not even address this part of the CWT Parties' motion. And

14

in his Counter-Rule 56.1 Statement, Ker either admits, or merely denies knowledge or

15

information about, the facts that support the litigation privilege—and does not attempt to

16

refute them. Dkt. No. 166 ¶¶ 47-56. Thus, this Court should grant summary judgment for

17

the CWT Parties dismissing this claim.

18

**IV.    THIS COURT SHOULD DENY DEFENDANTS' CROSS MOTION FOR SUMMARY JUDGMENT**

19
20

As an initial matter, Defendants have failed to provide a 56.1 Statement of

21

Undisputed Material Facts in support of their cross motion. Instead, the 56.1 Statement

22

they filed relates solely to Ker's and Carrigan's opposition to the CWT Parties' summary

23

judgment motion. This alone is a ground to deny the cross motion. *See* L.R. 56.1 ("failure

24

to submit a separate statement of facts . . . may constitute grounds for the denial of the

25

motion"); *see also Fernandez v. City of Phoenix*, 2012 WL 1985682, at *3 (D. Ariz. June

26

4, 2012) ("non-compliance" with L.R. 56.1 is an "an independent ground" for denying a

27
28

-18-

1

2

summary judgment motion).[3]

3

In any event, as explained below, Defendants' cross motion should be denied on

4

the merits as well.

5

6

**A. Defendants Fail to Show That They Are Entitled to Summary Judgment on the CWT Parties' Claims for Breach of Trust and Breach of Fiduciary Duty, and Aiding and Abetting These Torts**

7

Defendants argue that they are entitled to judgment as a matter of law on the CWT

8

Parties' claims for breach of trust and aiding and abetting breach of trust because Section

9

2.3 of the UPA—which requires RDX to "allocate[] and distribute[]" the tax credits to the

10

CWT Parties—(1) does not use the words "trust, a trustor, a trustee or a beneficiary," and

11

(2) "makes no reference to Carrigan, Ker or Danzik, in any capacity." Dkt. No. 165 at 19.

12

But none of this is necessary to create an express trust or to establish Carrigan and Ker's

13

liability for misappropriating trust funds.

14

15

*First*, it is well established that an agreement can "create an express trust without

16

using the words 'trust' or 'trustee.'" *In re Dreier LLP*, 452 B.R. 391, 421 (Bankr.

17

S.D.N.Y. 2011) (citing 1 *Scott & Ascher on Trusts*, § 4.2). Rather, a trust is simply "a

18

fiduciary relationship with respect to property, arising from a manifestation of intention to

19

create that relationship and subjecting the person who holds title to the property to duties

20

to deal with it for the benefit . . . one or more persons." Restatement (Third) of Trusts § 2

21

(2003); *see also In re Kent*, 396 B.R. 46, 50 (Bankr. D. Ariz. 2008) (citing *Doss v. Kalas*,

22

94 Ariz. 247, 252 (Ariz. 1963)). Courts have held that "the crucial factor in determining

23

whether a trust relationship is created in an agreement is the presence of a duty to

24

segregate funds purportedly 'held in trust.'" *In re Einhorn*, 59 B.R. 179, 184 (Bankr.

25

E.D.N.Y. 1986); *see also In re Property Leasing & Management, Inc.*, 46 B.R. 903, 907-

26

27

28

---

[3] Because Defendants have not identified any undisputed material facts in support of their cross motion, the CWT Parties have not submitted a Counter-56.1 Statement.

08 (Bankr. E.D. Tenn. 1985) (property management agreement created an express trust when the manager was required to deposit rent payments into a segregated account for the benefit of the property owners and its use of the funds was limited to payment of operating expenses).

Here, as explained in the CWT Parties' opening brief and above, RDX argued unsuccessfully in the New York Action that it was not required to segregate the tax credits, and was instead permitted to spend those funds upon receipt. Dkt. No. 129-16 at 3; *id.* at 8. The New York Court rejected these arguments. Dennis Dkt. No. 60-16 at 6; 56.1 ¶ 23. So Ker and Carrigan, who are in privity with RDX, are barred by res judicata and collateral estoppel from disputing RDX's obligation to segregate the tax credits funds and to refrain from spending them—the critical hallmarks of a trust relationship.

Moreover, the UPA itself establishes RDX's obligation to segregate and refrain from spending the tax credit, as it provides that upon receipt the credit "***shall be allocated and distributed***" to the CWT Parties. Dkt. No. 60-7 § 2.3. Thus, even without the New York court's findings, the plain language of the UPA establishes the prerequisites for an express trust—or at a minimum, creates a genuine issue of material fact precluding summary judgment.

***Second***, that the UPA does not mention Carrigan and Ker by name is likewise irrelevant, since "an officer who causes a corporate trustee to commit a breach of trust causing loss to the trust administered by the corporation is personally liable to the beneficiaries for the loss." *In re Baird*, 114 B.R. 198, 204 (9th Cir. BAP 1990) (citing *G Ranching Co. v. Stewart Title and Trust*, 128 Ariz. 590, 593 (Ariz. Ct. App. 1981)). There is no dispute that Carrigan and Ker authorized RDX to deposit the tax credits in its general operating accounts and to spend the funds. Thus, they are individually liable for the breach of trust, or alternatively for aiding and abetting RDX's breach.

Concerning the CWT Parties' breach of fiduciary duty claim, that RDX held the tax credits in trust supports this claim (and the aiding and abetting claim). It is axiomatic that "[a] trustee owes fiduciary duties to trust beneficiaries, and breach of such a duty is a breach of trust." *Matter of Oakland Living Trust*, 2017 WL 2544836, at *2 (Ariz. Ct. App. June 1, 2017); *see also In re Escarcega*, 573 B.R. 219, 233 (9th Cir. BAP 2017) ("at common law, trustees owe a fiduciary duty of loyalty to the trust beneficiaries"). Thus, there is at least a genuine issue of material fact concerning whether Defendants were trustees and thus owed the CWT Parties fiduciary duties.

### B. Defendants Fail to Show That They Are Entitled to Summary Judgment on the CWT Parties' Claims for a Constructive Trust Against Elizabeth

Defendants do not dispute that the record warrants imposition of a constructive trust on Elizabeth, who received a portion of the CWT Parties' tax credit funds via transfers from DAS to her personal account. Instead, they argue that the claim should be dismissed because "constructive trust is an equitable remedy tied to unjust enrichment," and not "an independent claim." Dkt. 165 at 19–20. But Defendants err.

Contrary to Defendants' argument, Arizona courts have recognized stand-alone claims for imposition of a "constructive trust." *See, e.g.*, *Grantham v. Sims*, 2016 WL 4761318, at *4-6 (Ariz. Ct. App. Sept. 13, 2016) (affirming trial court's judgment in favor of plaintiff on claim for imposition of a constructive trust). And in any event, the CWT Parties assert a claim against Elizabeth for unjust enrichment and restitution based on her receipt of a portion of the tax credits. And Defendants do not dispute that a constructive trust is an appropriate remedy for that claim.

### C. Defendants Fail to Show That They Are Entitled to Summary Judgment on the CWT Parties' Claims for an Accounting from Elizabeth

The CWT Parties are entitled to an accounting from Elizabeth, because the evidence shows that she received a portion of the tax credits, which a forensic accountant

traced to an account in her name. Defendants claim that there is no basis for an accounting because (1) "there is no fiduciary relationship or any existing accounting complexity," and (2) the CWT Parties did not make a demand for an accounting that was refused. Dkt. 165 at 23. Both arguments are wrong.

As shown above, the tax credits were held in trust for the benefit of the CWT Parties and were misappropriated, establishing a breach of fiduciary duty. That a portion of the tax credits was transferred to Elizabeth does not "divest" those funds of their "trust character." *Republic Supply Co. of Cal. v. Richfield Oil Co. of Cal.*, 79 F.2d 375, 377 (9th Cir. 1935). Thus, the CWT Parties are entitled to the same equitable remedies against Elizabeth (the recipient of their trust funds) as they would be against the trustee or its agents. Further, the web of accounts that Dennis used to convert the tax credits is exceedingly complex. The CWT Parties are thus entitled to a full accounting from Elizabeth to determine whether any other portion of their funds made their way to her accounts.

Moreover, the CWT Parties did demand a full accounting from Elizabeth in a letter to her counsel, dated January 19, 2016. Eilender Opp. Decl., Ex. A. But to date no such accounting has been provided.

## CONCLUSION

This Court should, if necessary, deem the CWT Parties' Second Amended Complaint (Bridges Dkt. No. 56) amended to include a conversion claim against Ker and Carrigan; should grant summary judgment in the CWT Parties' favor on this conversion claim against Ker and Carrigan, Ker's and Carrigan's defenses to this claim, and Ker's defamation counterclaim; and should deny Ker's, Carrigan's, and Elizabeth's cross motion for summary judgment.

Dated: September 12, 2018
        Phoenix, Arizona

                                    Respectfully submitted,

                                    **RYAN RAPP & UNDERWOOD, P.L.C.**

                                    By:    /s/ Henk Taylor (016321)
                                           J. Henk Taylor (016321)
                                           3200 N. Central Ave., Suite 1600
                                           Phoenix, Arizona 85012
                                           Telephone: (602) 280-1000
                                           Facsimile: (602) 265-1495
                                           E-Mail: htaylor@rrulaw.com

                                    **SCHLAM STONE & DOLAN LLP**

                                           Jeffrey M. Eilender
                                           Bradley J. Nash
                                           Joshua Wurtzel
                                           26 Broadway
                                           New York, New York 10004
                                           Telephone: (212) 344-5400
                                           Facsimile: (212) 34407677
                                           E-Mail: jeilender@schlamstone.com
                                           E-Mail: bnash@schlamstone.com
                                           E-Mail: jwurtzel@schlamstone.com

                                    *Attorneys for Plaintiffs CWT Canada II Limited*
                                    *Partnership and Resource Recovery*
                                    *Corporation*

**ORIGINAL** e-filed and **COPIES**
e-mailed this 12th day of September, 2018 as
follows:

Dennis I. Wilenchik
David A. Timchak
Craig William Broadbent
Victoria Stevens
**WILENCHIK & BARTNESS P.C.**
2810 North Third Street
Phoenix, AZ 85004
diw@wb-law.com
davidt@wb-law.com
cwbroadbentesq@gmail.com
victorias@wb-law.com
admin@wb-law.com

Leo R. Beus
Timothy John Paris
**BEUS GILBERT PLLC**
701 North 44th Street
Phoenix, AZ 85008
lbeus@beusgilbert.com
tparis@beusgilbert.com

*Attorneys for Defendants Tony Ker,*
*Richard Carrigan, and Elizabeth J.*
*Danzik*

/s/ Henk Taylor
J. Henk Taylor