**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

CWT Canada II Limited Partnership, an
Ontario, Canada Limited Partnership, et al.,

Plaintiff,

v.

Elizabeth J. Danzik, an Individual, et al.,

Defendants.

No.  CV16-0607 PHX DGC
CV16-2577 PHX DGC

**ORDER**

Plaintiffs CWT Canada II Limited Partnership and Resource Recovery Corporation (collectively "CWT") sued Defendants Elizabeth J. Danzik ("Elizabeth"), Danzik Applied Sciences, LLC ("DAS"), Tony Ker ("Ker"), and Richard Carrigan ("Carrigan") for various claims related to approximately $5 million in unpaid tax credits.  Doc. 1; Bridges Doc. 56.[1] CWT, Ker, Carrigan, and Elizabeth move for summary judgment.  Docs. 156; 165.  Ker and Carrigan also move to strike a CWT sur-reply.  Doc. 175.  The motions are fully briefed, and oral arguments will not aide the Court's decision.  LR Civ. 7.2(f); Fed. R. Civ. P. 78(b).  For the following reasons, the Court will deny CWT's motion in part and grant

---

[1] This case represents the consolidation of three separate cases: *CWT Canada II, LP v. Elizabeth J. Danzik*, No. 16-cv-00607-DGC (the "Elizabeth Action"); *CWT Canada II, LP v. Kevin Bridges*, No. 16-cv-02577-DGC (the "Bridges Action"); and *Dennis M. Danzik v. CWT Canada II, LP*, No. 17-cv-00969-DGC (the "Dennis Action").  Doc. 96.  Citations to documents filed in the Bridges Action, 16-cv-02577, or the Dennis Action, 17-cv-00969, will be referred to as "Bridges Doc." or "Dennis Doc.," respectively.  Citations to documents filed in the Elizabeth Action, 16-cv-00607, will simply be to "Doc."

it in part, deny Ker and Carrigan's Motion, grant Elizabeth's motion in part and deny it in part, and grant Ker and Carrigan's motion to strike.

## I. Background.

### A. The Parties and the Agreement.

Dennis Danzik ("Danzik") was the chief executive officer of RDX Technologies, Corp. ("RDX"), a now-defunct corporation. Doc. 1 ¶1. Danzik also owns DAS. Bridges Doc. 1 ¶ 2. Dennis and his spouse, Elizabeth, own Deja II, LLC ("Deja"). Doc. 1 ¶ 1. CWT entered into a transaction to sell their company, Changing World Technologies, L.P. ("Changing World"), to RDX. Bridges Doc. 1 ¶ 2. CWT also entered into a transaction to purchase RDX stock. *Id*. ¶ 32. Ker was the chairman of the RDX board, and Carrigan was a board member. *Id*. ¶ 5.

In 2013, CWT and RDX entered into a Uniform Purchase Agreement (the "UPA"), for Changing World. *Id*. ¶ 22. Under the UPA, RDX signed two promissory notes totaling $20 million and provided stock to CWT. *Id*. ¶ 32. Changing World was the holding company and sole member of Renewable Environmental Solutions, LLC ("RES"), which manufactured and sold renewable diesel fuel. *Id*. Under a federal subsidy program, RES was eligible for tax credits for every gallon of diesel fuel produced. *Id*. RES owed no taxes because it had no profit, and therefore it received a tax credit payment every year. *Id*. In 2011, the subsidy program expired and then was renewed retroactively in 2013. *Id*. ¶ 24. Accordingly, in 2013 or 2014 RES could request millions of tax credits earned in 2012. *Id*. Under the UPA, "one hundred percent of all amounts received by [RDX] as a result of the reinstatement of any Federal or state tax credit relating to the period prior to and including December 21, 2012 [would] be allocated and distributed to [CWT]." Doc. 158-1 (0607) § 2.3.

Prior to selling Changing World to RDX, CWT invited Gem Holdco, LLC ("GEM") to be a limited partner with the CWT parties. *Id*. GEM wanted to invest enough to own sixty percent of CWT, but it planned to resell the ownership to RDX. *Id*. By March 2013, CWT realized that GEM was not complying with its contractual obligations to fund the

company and obtain its sixty percent interest. As a result, CWT contracted with RDX separately to sell Changing World. *Id.* ¶ 31.

**B.      The New York Action.**

GEM filed an action in New York against CWT for failing to sell it sixty percent of Changing World, and CWT joined Danzik and RDX as defendants. *Id.* ¶ 39. By August 2014, relations between CWT, Danzik, and RDX began to sour because RDX refused to pay the purchase price for Changing World, to remit the tax credits to CWT, and to provide $1 million in stock. *Id.* ¶ 40.

Danzik argued that CWT defrauded RDX because the RES refining process was not the expected quality. *Id.* ¶¶ 41-42. Danzik further argued that he was holding the tax credit funds for the U.S. government because RES did not produce renewable diesel to be eligible for the tax credit. *Id.* ¶ 44. In 2015, CWT filed crossclaims in the New York action against Danzik and RDX for the misappropriation of the tax credits and other breaches of the UPA. *Id.* ¶ 48; Dennis Doc. 60-12 at 30.

In December 2015, CWT moved for a preliminary injunction to prohibit Danzik and RDX from using or transferring the RES tax credit funds and to require them to deposit the funds into a separate trust account. Dennis Doc. 60-15. The New York Court granted CWT's motion. Dennis Doc. 60-16. Justice Kornreich explained that there was "no question of fact that the [] tax credits d[id] not belong to [Danzik and RDX]. The money either belong[ed] to the CWT parties or the federal government. . . . [R]egardless of the outcome of this litigation, [Danzik and RDX] w[ould] not keep the money." *Id.* at 6.

At a hearing on November 4, 2015, Justice Kornreich granted a motion to strike Danzik and RDX's defenses. *See* Dennis Doc. 60-19 at 3-4 ("I am striking Mr. Danzik and RDX's, any kind of response they have to [the crossclaim]. There is no answer to that, no opposition to that. There is going to be a default on that if there is a motion for a default judgment."). This ruling was based on Danzik and RDX's repeated refusals to comply with court orders to produce certain bank records and ESI during discovery. *Id.* at 3-5.

On June 3, 2016, after holding a contempt hearing, Justice Kornreich found Danzik and RDX in civil and criminal contempt for violating the attachment order and a later-granted temporary restraining order requiring Danzik and RDX to set aside the tax credit funds. Dennis Doc. 60-22. Justice Kornreich proceeded to the merits and found that there was "no question that [Danzik and RDX] willfully violated the Attachment Order and the TRO." *Id.* at 9.

In August 2016, Justice Kornreich granted CWT's unopposed motion for default judgment against Danzik and RDX on their crossclaims. Dennis Doc. 60-2.[2] In assessing whether CWT had a viable cause of action against Danzik and RDX for purposes of entering default judgment, Justice Kornreich explained that the breach of trust crossclaim "concerns [Danzik and RDX's] breach of their obligation to hold the tax credits in constructive trust for [CWTs], as required by the UPA." *Id.* at 5-6. She concluded that Defendants' "right to the tax credits under the UPA is clear, and any defense RDX may have had has been stricken." *Id.* at 6. A final judgment was entered the following month against Danzik and RDX in the amount of $7,033,491.13. Dennis Doc. 60-3.

### C.  The Current Litigation.

On March 4, 2016, CWT sued Elizabeth and Deja, alleging that Elizabeth received $730,000 that Danzik stole from CWT, and that she defrauded CWT in a separate RDX stock transaction. *See* Doc. 1 ¶ 1. Next, CWT sued DAS, Carrigan, and Ker, alleging that they knew of and aided in Danzik's fraudulent theft scheme. Bridges Doc. 1. Ker filed a counterclaim to that suit. *See* Bridges Doc. 81. Finally, Danzik and RDX sued CWT and various parties related to CWT, alleging that they defrauded Danzik into purchasing Changing World. Dennis Doc. 1. On September 27, 2017, the Court granted the parties' motion to consolidate these actions and directed the parties to make subsequent filings in

---

[2] The motion for default was originally filed in November 2015, but Judge Kornreich said she was delayed in deciding the motion because of "[Plaintiffs'] dilatory tactics . . ., such as filing for bankruptcy on the eve of oral argument . . . and the continuation of the contempt hearing." Dennis Doc. 60-2 at 4.

the Elizabeth Action. *See* Doc. 96. The Court granted motions to dismiss Ker's abuse of process counterclaim and the Dennis Action. *See* Doc. 119.

The remaining claims include fraud against Carrigan and Ker (Bridges Doc. 56 ¶¶ 95-100); conversion against DAS (*id*. ¶¶ 101-11); tortious interference with contractual relations against Carrigan and Ker (*id*. ¶¶ 112-19); breach of trust against Carrigan and Ker (*id*. ¶¶ 120-30); breach of fiduciary duty against Carrigan and Ker (*id*. ¶¶ 131-39); aiding and abetting fraud, conversion, breach of trust/misappropriation of trust assets and breach of fiduciary duty against DAS, Bridges, Carrigan, and Ker (*id*. ¶¶ 140-51); unjust enrichment and restitution against DAS (*id*. ¶¶ 152-57); constructive trust against DAS (*id*. ¶¶ 158-62); fraudulent transfers under A.R.S. § 44-1004(A)(1) against DAS (*id*. ¶¶ 163-68); fraudulent transfers under A.R.S. § 44-1004(A)(2) against DAS (*id*. ¶¶ 169-75); fraudulent transfers under A.R.S. § 44-1005 against DAS (*id*. ¶¶ 176-82); and common law conspiracy to commit fraudulent transfers against DAS, Carrigan, and Ker (*id*. ¶¶ 183-87).[3] Claims for defamation under Arizona and Canadian law remain in Ker's second amended counterclaim against CWT. *See* Doc. 99 ¶¶ 63-76.

In the Elizabeth Action, the remaining claims include fraud against Elizabeth and Deja (Doc. 1 ¶¶ 95-109); conversion against Elizabeth and Deja (*id*. ¶¶ 110-15); money had and received against Elizabeth and Deja (*id*. ¶¶ 116-22); breach of contract against Deja (*id*. ¶¶ 123-28); conversion of the tax credits against Elizabeth (*id*. ¶¶ 129-38); money had and received related to the tax credits against Elizabeth (*id*. ¶¶ 139-45); unjust enrichment and restitution against Elizabeth and Deja (*id*. ¶¶ 146-51); unjust enrichment and restitution against Elisabeth (*id*. ¶¶ 152-57); constructive trust against Elizabeth and Deja (*id*. ¶¶ 158-62); and accounting against Elizabeth and Deja (*id*. ¶¶ 163-67).

## II.  Legal Standard.

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which

---

[3] All remaining claims are from the Second Amended Complaint. The Second Amended Complaint includes claims against Kevin Bridges, but all parties stipulated to his dismissal. *See* Bridges Doc. 65.

it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. Discussion.

### A. CWT's Motion.

CWT moved for summary judgment on the conversion claim against Ker and Carrigan, on the issue of whether Ker and Carrigan could relitigate issues decided in the New York action, and on Ker's defamation counterclaims. *See* Doc. 156.

#### 1. Conversion Claim.

##### a. Notice of Conversion Claim Against Ker and Carrigan.

CWT argues that summary judgment should be granted against Ker and Carrigan for conversion, but Ker and Carrigan argue that CWT never pled a conversion claim against them. Docs. 156 at 11; 165 at 9. Ker and Carrigan argue that the only count related to their conversion of the tax credits is a claim for aiding and abetting conversion. Doc. 165; *see also* Bridges Doc. 56 ¶¶ 140-51.

Under the liberal rules of pleading, a plaintiff need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A pleading must give fair notice of the claims against each Defendant. *See Rynn v. McKay*, No. CV-18-00414-PHX-JJT, 2018 WL 3926666, at *2 (D. Ariz. Aug. 16, 2018) (group pleading fails to comply with Rule 8(a)(2) because it does not give fair notice of the claims

against each defendant with the requisite specificity). Plaintiffs' complaint need not contain a specific legal theory so long as the complaint, fairly read, contains the factual basis to provide notice of the absent claim. *See Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (affirming summary judgment where the complaint did not give fair notice of the factual basis for a claim raised for first time in opposition to summary judgment); *Am. Timber & Trading Co. v. First Nat'l Bank of Or.*, 690 F.2d 781, 786 (9th Cir. 1982) ("A party need not plead specific legal theories in the compliant, so long as the other side receives notice as to what is at issue in the case.").

CWT's second amended complaint alleges conversion as its second cause of action against DAS. Bridges Doc. 56 ¶¶ 101-11. CWT first alleges that Danzik and RDX received specific sums of money in an aggregate amount of about $ 6 million in the form of tax credit payments from the United States Treasury. *Id.* ¶ 102. CWT next alleges that "Danzik, acting in concert with Bridges, Carrigan, Ker and other RDX insiders, diverted the funds to accounts in the name of DAS and/or to other accounts that Danzik controlled." *Id.* ¶ 103. The complaint then states that DAS received identified funds that rightly belong to the CWT parties, the CWT parties have a possessory interest to these funds that is superior to that of DAS, DAS failed to return the tax credit funds and has "exercised dominion of them for its own purpose, and DAS therefore converted the tax credits. *Id.* ¶ 101-07. In its sixth cause of action, CWT alleges that Carrigan and Ker are liable for aiding and abetting Danzik and RDX's conversion of the credits. *Id.* ¶ 141.

CDX's complaint does not assert a conversion claim against Ker and Carrigan. The eleven factual allegations associated with the conversion claim mainly relate to DAS's actions and liability in relation to the tax credits. Specifically, the complaint alleges that "DAS has unlawfully converted the Tax Credits funds to its own use" (Bridges doc. 56 ¶ 107), and "DAS is liable for conversion in an amount to be determined at trial" (*id.* ¶ 111). The only reference to Ker and Carrigan states that "Danzik, acting in concert with Carrigan and Ker . . . diverted the funds to accounts in the name of DAS." *Id.* ¶ 103. These allegations do not support a claim for conversion against Carrigan and Kerr. *See Bodley v.*

*Macayo Rests., LLC*, 546 F. Supp. 2d 696, 698 n.2 (D. Ariz. 2008) (new factual theories in response to summary judgment do not preclude summary judgment); *Kreiger v. Nationwide Mut. Ins.*, No. CV11-01059-PHX-DGC, 2012 WL 1029526, at *5 (D. Ariz. March 27, 2012) (where the complaint does not mention the facts the legal theory rests on it fails to give adequate notice to the parties); *Stokes v. Arpaio*, No. CV 04-2845-PHX-DGC (MEA), 2008 WL 3286175, at * 6 (D. Ariz. Aug.7, 2008) ("Plaintiff's new allegations [challenging a different policy] cannot properly be construed as falling within the First Amended Complaint").

CWT argues that the parties have been on notice of the conversion claim since the beginning of the case because Ker and Carrigan's possible conversion came up during discovery and because CWT asserted a claim for breach of fiduciary duty, which put them on notice that they could be held liable regardless of their tortious intent. *See* Doc. 170 at 9-10. CWT cites to several documents outside of the complaint that demonstrate Carrigan and Ker knew about the conversion claim. *See id.* (citing Bridges Doc. 54 at 11 (stating that Carrigan, as a corporate director, was liable for the theft of the tax credits); Bridges Doc. 70 at 5 (stating that Danzik gave testimony that Carrigan was an accomplice to the theft); Doc. 136 at 7 (stating "Ker and Carrigan are liable because they caused RDX to deposit and use the CWT Parties' tax credits"). Further, CWT points to Ker and Carrigan's deposition questioning about an auditor's report that noted lack of oversight of closely related transactions. Doc. 170 at 10

CWT's arguments are unavailing. The test for notice is based primarily on the complaint. CWT cites *Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004), for the proposition that a party can be put on notice of a claim if the other party seeks discovery on that issue. *See* Doc. 170 at 10. But *Sagana* addressed not only a complaint but an accompanying settlement agreement. Indeed, the Ninth Circuit looked to the text of the settlement agreement to determine whether the plaintiff's right to pursue a particular claim had been preserved. The court of appeals found the factual basis for the claim clearly set out in the settlement agreement and also found that the complaint contained enough facts to support

the claim.  384 F.3d at 736.  As noted above, the conversion claim in CWT's complaint focuses on DAS and contains few facts alleging conversion by Ker and Carrigan.

Nor is the Court persuaded that the cited documents and depositions could only be construed as relating to a conversion claim against Ker and Carrigan.  The statements could also be used to support an aiding and abetting claim, or any of the other eleven causes of action in CWT's complaint.  Moreover, a claim for breach of fiduciary duties does not necessarily indicate that CWT intended to sue Ker and Carrigan for conversion.  The Court will not grant summary judgment in favor of CWT on a conversion theory against Ker and Carrigan.

### b. CWT's Request to Amend.

In the alternative, CWT asks that the Court consider CWT's complaint amended to conform with evidence presented during summary judgment pursuant to Federal Rule 15(b).  Doc. 170 at 11.  The Court will deny this request because CWT has not shown good cause under Rule 16(b).[4]

Once a district court enters a scheduling order that sets a deadline for amending pleadings and the deadline passes, Rule 16 controls.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).  A party seeking leave to amend after a Rule 16 deadline passes must show good cause to extend the deadline.  Fed. R. Civ. P. 16(b)(4); *see also id*. (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987)).  Good cause exists when a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 Advisory Comm.'s Notes (1983 Am.).  Where the party has not been diligent, the inquiry ends, and the motion is denied.  *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

The Court issued a Rule 16 scheduling order that set a deadline for amending pleadings 60 days from January 20, 2017.  *See* Doc. 69.  CWT seeks to amend its complaint

---

[4] If the Court will not consider the complaint amended, CWT asks to dismiss the summary judgment motion without prejudice so that it may amend its complaint.  Doc. 170 at 11.  The Court will deny this request because CWT has not shown good cause as discussed above.

some 18 months after the deadline has passed.  CWT argues that good cause exists because it did not discover the Arizona cases defining the elements of primary liability for conversion by a director until after the complaint was filed, and Ker and Carrigan did not previously raise any issues with CWT's pursuit of a claim for conversion.  *See* Doc. 170 at 12.

By its own account, CWT knew of the actions of Ker and Carrigan and considered them liable for conversion before initiating discovery.  Through reasonable diligence, CWT could have researched the relevant Arizona law and asserted a conversion claim within the Court's deadline.  Because CWT has not shown that it was unable to meet the deadline through reasonable diligence, it has not shown good cause for extending the deadline.  CWT's argument that Ker and Carrigan failed to object to the conversion claim reverses the Rule 16 burden.

CWT argues that Rule 15(b) allows amendment of pleadings during summary judgment without requiring a Rule 16(b)(4) good cause showing.  In support, CWT cites *Desertrain v. City of Los Angeles*, 754 F.3d 1147 (9th Cir. 2014).  But the court of appeals in *Desertrain* addressed amendment under Rule 15(b) only.  The court never stated whether the amendment was sought after a deadline in a Rule 16 case management order, and never mentioned longstanding Ninth Circuit precedent on Rule 16 such as *Johnson* and *Zivkovic*.  *See also In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013) (following *Johnson* and applying Rule 16's good cause standard rather than Rule 15's more liberal amendment standards).  What is more, unlike this case, the party seeking to add a claim in *Desertrain* learned of the factual basis for the claim only one week before the close of discovery and shortly before summary judgment briefing.  *Id.* at 1152.

Even if the Court were to apply Rule 15 standards, it would deny CWT's request to amend its complaint at this late hour in the litigation.  As noted above, CWT had knowledge of the actions underlying its potential conversion claim from the start of this litigation.  Additionally, CWT has amended its complaint twice.  Not only did it fail to add this claim

to the amended complaints, but it removed a sentence potentially supporting conversion liability against Carrigan. *Compare* Bridges Doc. 1 ¶ 101 (stating that Carrigan and DAS were liable for converted tax credits)*, with* Bridges Doc. 56 ¶ 113 (stating that only DAS is liable for conversion).

Moreover, the amendment would prejudice Ker and Carrigan. A simple conversion claim does not require knowledge of the underlying tort, but a claim for aiding and abetting conversion does. *Compare Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) ("[C]onversion is the act of wrongful dominion or control over personal property that interferes with another's right to immediate possession of the personal property at the time of the alleged conversion."), *with Greenfield Plaza Inv'rs LLC v. Stearns Bank, N.A.,* No. CV 12-389-PHX-SRB, 2012 WL 13024089, at *10 (D. Ariz. Aug. 14, 2012) (A defendant must know that the primary tortfeasor's conduct constitutes a breach of duty to be liable for aiding and abetting conversion). Requiring Ker and Carrigan to defend against a much lower intent requirement at this late date in the case would cause prejudice that easily could have been avoided had CWT pled conversion in its original or amended complaint. *See* Doc. 165 at 10; *see also Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) ("Even though eight months of discovery remained, requiring the parties to scramble and attempt to ascertain whether the [product purchased] was tainted, would have unfairly imposed potentially high, additional litigation costs on [defendants] that could have easily been avoided had [plaintiff] pursued its 'tainted product theory' in its original complaint or reply.").

The Court considers five factors to assess the propriety of a motion for leave to amend under Rule 15: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). The Court would deny CWT's request under Rule 15 on the basis of undue delay and prejudice to the opposing party.

### 2. CWT's Claim for Aiding and Abetting Conversion.

In its reply, CWT argues that the Court should grant summary judgment against Ker and Carrigan for aiding and abetting RDX's conversion of the tax credits. *See* Doc. 170 at 15. The Court does not address arguments made for the first time in reply. *See Best Western Int'l, Inc. v. AV Inn Assocs.*, No. CV-08-2274-PHX-DGC, 2010 WL 289895, at *3 (D. Ariz. July 14, 2010); *see also Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008).[5]

### 3. Preclusion of Ker and Carrigan's Arguments and Issues.

CWT argues that the Court should grant summary judgment on Ker and Carrigan's defenses that were stricken in the New York action because Ker and Carrigan are in privity with RDX, and res judicata bars Ker and Carrigan from making arguments that RDX made or could have made. Doc. 156 at 14. In the alternative, CWT argues that collateral estoppel bars Ker and Carrigan from relitigating issues decided in the New York action. *Id*. at 20.

The Full Faith and Credit Act provides that a state's judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. In determining the res judicata and collateral estoppel consequences of a state court judgment, federal courts apply the doctrines of the state where the judgment was rendered. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

#### a. Privity.

As a threshold question, the Court must determine whether Ker and Carrigan are in privity with RDX and Danzik. *See In re Shea*, 132 N.E.2d 864, 875 (N.Y. 1956) (doctrine of res judicata prevents those in privity with parties to an action from subsequently relitigating any questions that were necessarily decided there in). CWT argues that as directors and officers of RDX, Ker and Carrigan shared an "identity of interest and [a]

---

[5] In response to CWT's motion, Ker and Carrigan also argue that CWT's "conversion-related claim" is precluded by the economic loss rule. *See* Doc. 165 at 13. Because the Court will not consider CWT's conversion claims [as opposed to aiding and abetting claim] and Ker and Carrigan did not cross move for summary judgment on CWT's aiding and abetting conversion claim, the Court will not consider this argument.

close relationship with RDX." Doc. 156 at 17. CWT also argues that Ker controlled RDX and its conduct in the New York action in the months leading up to the contempt hearing. *Id.* at 19.

Ker and Carrigan counter that neither of them "controlled" the New York litigation. Doc. 165 at 16. Ker further argues that he approved payments involving the tax credit funds only at the advice of other officers in the company, without knowledge of impropriety. *Id.* Carrigan argues that he was not in control as he had left the company as a director following the tax credit transactions and the results of the audit report which questioned related party transactions like those RDX had with Danzik. *Id.*

For privity to exist under New York law, the interests of the nonparty must have been represented in the prior proceeding. *Green v. Santa Fe Indus.*, 514 N.E.2d 105, 114 (N.Y. 1987). Additionally, parties are in privity if the nonparty controlled the conduct of the prior action to further his own interests. *Id.* The character and extent of the involvement in the litigation is often a question of fact. *Watts v. Swiss Bank Corp.*, 265 N.E.2d 739, 746 (N.Y. 1970). All the circumstances must be considered to determine whether the participation amounted to sharing control of the prior litigation. *Id.*

CWT argues that the privity test for a corporation and its directors requires only an identity of interests, and that courts find such an identity of interests because of the nature of the corporate relationship. *See* Doc. 170 at 18. But under New York law a "judgment against a corporation bars later litigation on the same cause of action by an officer, director or shareholder of the corporation *if the individual participated in and effectively controlled the earlier case*." *U.S. Sec. & Futures Corp.*, No. 00 Civ. 2322 RMBTHK, 2002 WL 34191506, at *4 (S.D. N.Y. May 13, 2002) (emphasis added) (finding privity where parties to a contract dispute are identified together in the contract and share identical rights and obligations under the contract); *Hellman v. Hoenig*, 989 F. Supp. 532, 532 (S.D.N.Y. 1998) (finding privity where interests were identical and by virtue of his role as CEO, Chairman of the Board, and majority shareholder, the officer exercised control over the prior litigation); *Sterling Doubleday Enter. v. Marro*, 238 A.D.2d 502, 503 (N.Y. App. Div.

1997) ("[T]he defendants, who together held offices of president, vice-president, secretary, and treasurer of [the corporation] and constituted a majority of the three shareholders and directors of [the corporation], which is a closely-held corporation, were in privity with [the corporation] and had control of the litigation that resulted in default judgment.").

Given this law, the Court cannot conclude that privity exists simply because Ker and Carrigan were directors or officers of RDX. CWT must show that Ker and Carrigan controlled the litigation. CWT cites an affidavit filed by Ker in the New York action in which Ker stated that he worked with Danzik on a nearly daily basis from mid-2009 to the present and expended significant time defending the New York action. *See* Doc. 161-6 at 3. The Court cannot conclude that this document indisputably establishes that Ker, much less Carrigan, controlled the earlier litigation. Therefore, the Court cannot find privity of the parties at the summary judgment stage.

### b. Res Judicata or Collateral Estoppel of Issues.

Even if the Court were to find privity, it would not preclude litigation of all of Ker and Carrigan's arguments. CWT argues that res judicata should preclude Ker and Carrigan from making the following arguments: "(1) the CWT Parties defrauded RDX into entering into the UPA; (2) RDX was entitled to retain the tax credits, either because of the CWT Parties' alleged fraud or because of the terms of the UPA; (3) RDX and Dennis did not convert the tax credits; (4) RDX was not required to keep the tax credits it received in a segregated account, or RDX was permitted to spend the tax credits upon receipt; and (5) the CWT parties' tort claims are barred by the economic loss doctrine." Doc. 156 at 14.

As previously noted by the Court, res judicata is not applicable because it only precludes whole claims or defenses from being relitigated. *See* Doc. 139; *see also Williams v. City of Yonkers*, 160 A.D.3d 1017, 1018 (N.Y. App. Div. 2018). ("The doctrine of res judicata bars the litigation of a claim or defense if, in a former litigation between the parties, or those in privity with them, in which there was a final conclusion, the subject matter and the causes of action are identical or substantially identical.")

Collateral estoppel, which precludes the relitigation of *issues* when parties in a subsequent suit are in privity, is the applicable doctrine for the first four issues identified by CWT. Collateral estoppel bars relitigation when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Conason v. Megan Holding, LLC*, 29 N.E. 3d 215, 224 (NY Ct App. 2015). In cases where the plaintiff uses collateral estoppel offensively, the trial court is granted broad discretion to determine when it should be applied. *Parklane Hosiery Co. v. Shore*, 99 S. Ct. 645, 651 (1979); *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, No. 02 Civ. 0099 (RPP), 2004 WL 724690 (S.D. N.Y. March 26, 2004). The majority view is that collateral estoppel based on a default judgment is undesirable. *See Artmatic USA Cosmetics, Div. of Arthur Matney Co. v. Maybelline Co., a Div. of Schering Plough, Inc.*, 906 F. Supp. 850, 856 (D. Ariz. 1995).

Plaintiffs argue that collateral estoppel applies because (1) in the New York decision to grant the CWT Parties' attachment order, Justice Kornreich stated that "there is no question of fact" that the tax credits "either belong to the CWT Parties or the federal government"; (2) in the contempt decision, she stated that RDX and Danzik "indisputably" and "wrongfully withheld" the tax credits; and (3) in her decision granting the CWT Parties' motion for default judgment, she stated that there is "no question of fact that the tax credits belong to the CWT Parties" and that the "CWT Parties' right to the tax credits under the UPA is clear." Doc. 156 at 21-22.

Issues determined in the attachment order will not be barred by collateral estoppel. *See* 4 C.J.S. Appeal and Error § 204 Attachment (2018) (noting that attachment orders are not final). And the statement that RDX and Danzik wrongfully withheld the tax credits was not essential to the New York contempt order, which found Danzik in contempt for violating the Attachment Order. *See* Dennis Doc. 60-22 at 11 ("While so many of Danzik's actions are problematic, only those actions constituting violations of this court's

Attachment Order and TRO may be predicates for holding him in contempt.").  And the issues decided in the default judgment were not actually litigated.

### c. Conclusion.

In sum the Court concludes that CWT has failed to show it is entitled to summary judgment on whether privity exists between the New York action parties and Ker and Carrigan.  Further, res judicata and collateral estoppel are not applicable to the issues CWT seeks to preclude.

### 4. Ker's Defamation Claims.

CWT argues that the Court should grant summary judgment on Ker's counterclaims for defamation because statements regarding Ker were made in relation to litigation. Doc. 156 at 25.  Ker has provided no response and no additional information regarding where the publication of the defamatory statements occurred.  The Court is still unable to determine what choice of law applies. *See* Doc. 119 at 7.  CWT argues that under New York, Arizona, and Canadian law, Ker's claim fails because each jurisdiction recognizes a litigation privilege to defame.  *See* Doc. 156 at 26-28; *see also Green Acres Trust v. London*, 688 P.2d 617, 621 (Ariz. 1984) (recognizing that Arizona has applied an absolute privilege to defame in connection with judicial proceedings to protect parties, lawyers, witnesses and jurors); *Monument Mining Ltd. v. Balendran Chong & Bodi*, 2012 BCSC 1769, available at http://canlii.ca/t.fv05h ("[P]rivilege applies to communications which take place during, incidental to and in the processing and furtherance of judicial or quasi-judicial proceedings[.]"); *Front, Inc. v. Khalil*, 28 N.E.3d 15, 20(N.Y. 2015) ("[W]e have held that absolute immunity for liability for defamation exists for oral or written statements made by attorneys in connection with a proceeding before a court 'when such words and writings are material and pertinent to the questions involved.")

CWT points to declarations made by members of CWT that communications were made either in furtherance of settlement negotiations or at an attorney's instruction in preparation for settlement or the contempt hearing.  *See* Doc. 156 at 27; 157 ¶¶ 52-53. CWT also points to statements in Ker's deposition that he suspected defamatory statements

were made in relation to pending litigation. *See* Doc. 156 at 27. Although one of the pages for this cite is missing, Ker states that the communication and statements alleged in his complaint would have been made in connection with ongoing litigation. *See* Doc. 161-1 at 11-13; *see also* Doc. 99 ¶¶ 51-52. Ker has provided no response to these arguments. If Ker is admitting the statements were made in relation to pending litigation, there is no genuine issue of fact as to whether Ker can maintain his defamation counterclaims. The Court will grant CWT's motion for summary judgment with respect to Ker's defamation counterclaims.

### 5. Conclusion.

The Court will deny CWT's motion in part and grant it in part. The Court will deny CWT's motion on a conversion claim against Ker and Carrigan. The Court will also deny summary judgment on Ker and Carrigan's privity with RDX and Danzik for purposes of collateral estoppel and res judicata. The Court will grant summary judgment on Ker's defamation counterclaims.

### B. Ker and Carrigan's Motion.

Ker and Carrigan cross-move for summary judgment on the following claims: tortious interference with contract, breach of trust, breach of fiduciary duty, and aiding and abetting breach fiduciary duty and breach of trust. *See* Doc. 165 at 17.[6]

### 1. Tortious Interference with Contract.

Ker and Carrigan argue that only strangers or third-party beneficiaries to a contract can be liable for tortious interference, and, as directors and officers of RDX, they were neither. *See* Doc. 165 at 19. CWT does not respond.

Tortious interference with contract involves an individual "intentionally and improperly interfering with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract." *See* Restatement (Second) Torts § 766. As a rule, a party cannot

---

[6] In response, CWT argues that Ker and Carrigan failed to file a Local Rule 56.1 statement of undisputed material facts in support of their cross motion. *See* Doc. 170 at 21. The Court finds Ker and Carrigan have filed the necessary document as Doc. 166.

be liable for tortious interference with its own contract. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 32 (Ariz. 2002).

Ker and Carrigan state that they are directors and officers of RDX and deny that they are trustees of the tax credit funds under the UPA. But they provide no record cites or evidence that conclusively establishes whether they were parties to the UPA. The Court will not grant summary judgment on this claim because there is an issue of fact as to whether Ker and Carrigan were parties to the UPA and can be liable for interfering with the performance of the UPA.

### 2. Breach of Trust and Aiding and Abetting Breach of Trust.

Ker and Carrigan argue that they cannot be liable for breach of trust because the UPA makes no reference to an express trust, a trustor, or a beneficiary, they are not referenced in a trust capacity, and no factual or legal basis exists for asserting a trust claim. Doc. 165 at 19. CWT responds that the New York action has already determined that the identified language of the UPA imposes an obligation on RDX to segregate the tax credits for CWT, and such an obligation can create a trust without the express use of the word "trust." *See* Doc. 170 at 22-23; *see also* Restatement (Third) of Trusts § 2. CWT also points to language in the UPA that states the tax credit money "shall be allocated and distributed to the parties." *See* Doc. 170 at 23 (citing Dennis Doc. 60-7 § 2.3); *see also In re Einhorn*, 59 B.R. 179, 184 (Bankr. E.D.N.Y. 1986) ("[T]he crucial factor in determining whether a trust relationship is created in an agreement is the presence of a duty to segregate funds purportedly 'held in trust.'").

CWT has identified evidence that creates a genuine issue of fact on whether Ker and Carrigan were required to hold funds in trust for CWT parties. Ker and Carrigan reply that they are not parties to the UPA and did not intend to create a fiduciary relationship, so a trust could not have been created. *See* Doc. 173 at 8. The Court is unable to reconcile this position with Ker and Carrigan's assertion that they are parties to the contract under their

tortious interference argument. Thus, the Court finds that a dispute of fact exists and will not grant summary judgment on these claims.

### 3. Breach of Fiduciary Duty and Aiding and Abetting.

Ker and Carrigan argue that their relationship with CWT has only been contractual and, as a matter of law, they never owed a fiduciary duty to CWT. *See* Doc. 165 at 20. Their argument relies primarily on case law asserting that commercial contract relationships do not automatically create fiduciary relationships. *See Urias v. PCS Health Sys.*, 118 P.3d 29, 35 (Ariz. Ct. App. 2005) (collecting cases); *id.* (parties must intend to create a fiduciary relationship). But CWT argues that RDX held the tax credits in trust, and the parties to the agreement owed fiduciary duties as a result of the trust relationship. *See* Doc. 170 at 24; *see also In re Oakland Living Trust*, No. 1 CA-CV 16-0073, 2017 WL 2544836, at *2 (Ariz. Ct. App. June 1, 2017) (noting a trustee owes a fiduciary duty to a trust beneficiaries). Because an issue of fact remains about whether the contract created a trust for the tax credits, there is also an issue of fact as to whether the parties owed fiduciary duties to CWT.

### C. Elizabeth's Motion for Summary Judgment.

Within Ker and Carrigan's motion, Elizabeth moves for summary judgment on CWT's claims for constructive trust and accounting. *See* Doc. 165 at 18.

### 1. Constructive Trust.

Elizabeth argues that CWT's claim for a constructive trust is not an independent cause of action but an equitable remedy the Court may impose as necessary. *See* Doc. 165 at 20. A constructive trust is an equitable remedy that a court may impose "to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs." *Cal X-Tra v. W.V.S.V. Holdings, LLC*, 276 P.3d 11, 43 (Ariz. Ct. App. 2012). Courts often "impose a constructive trust when title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress, or similar means, or if there has been a breach of fiduciary duty." *See id.*

CWT cites to one unpublished Arizona Court of Appeals decision to support its assertion that "constructive trust" is an independent cause of action. *See* Doc. 170 at 24. The Court disagrees. In *Grantahm v. Simms*, the Arizona Court of Appeals impliedly recognized an equitable claim for constructive trust but did not actually provide elements for the claim and even indicated that a constructive trust was something to be imposed if there is a breach of fiduciary duty. *See* No. 2 CA-CV 2015-0107, 2016 WL 4761318, at *3 (Ariz. Ct. App. Sept. 13, 2016) (citing *Turely v. Ethington*, 146 P.3d 1282, 1285 (Ariz. Ct. App. 2006)). Further, although characterized as an independent claim, the court of appeals reviewed the trial court's imposition of a constructive trust. *Id.* at *5.

The Court will grant Elizabeth's motion for summary judgment with respect to CWT's constructive trust claim. This decision does not affect the Court's ability to impose a constructive trust as an equitable remedy for CWT's other claims.

### 2. Accounting.

Elizabeth argues that an accounting is inappropriate here because CWT has already hired a forensic accounting expert who has traced $1 million of the tax credit funds to Elizabeth. Doc. 165 at 21. CWT argues that it is entitled to an equitable accounting because the funds were held in trust and an accounting is an equitable remedy granted to trust beneficiaries. *See* Doc. 170 at 25. Further, Danzik used a complex web of accounts to convert the tax credits, and CWT needs a full accounting to determine just how much made its way to various accounts. *Id.*

An equitable accounting is a proper cause of action where the "accounts between parties are of such a complicated nature that only a court of equity can satisfactorily unravel them." *In re U.S. Fin. Sec. Litg.*, 609 F.2d 411, 417 (9th Cir. 1979) (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) (internal quotations omitted)). "The essence of the right of action is the close interrelations between the parties, akin to a fiduciary status." *Mollohan v. Christy*, 294 P.2d 375, 376 (Ariz. 1956).

An equitable accounting may be necessary if the Court ultimately concludes that a breach of trust occurred. Further, the Court agrees that the complex nature of Danzik's

accounts may warrant an accounting. The Court will deny summary judgment on the accounting claim.

### 3. Conclusion.

The Court will the motion for summary judgment on CWT's claims for breach of trust, breach of fiduciary duties, aiding and abetting breaches of trust and fiduciary duties, and accounting claims. The Court will grant summary judgment on CWT's constructive trust claim because it is not an independent claim.

### D. CWT's Sur-Reply and Ker and Carrigan's Motion to Strike.

On October 3, 2018, CWT filed "Reply in Further Support of CWT Parties' Motion to Deem the Second Amended Complaint Amended to Include a Conversion Claim Against Ker and Carrigan." Doc. 174. In response, Ker and Carrigan filed a motion to strike the filing as an unauthorized sur-reply. Doc. 175.

Under Local Rules of Civil Procedure 7.2, parties are entitled to file one reply motion. If a party wants to file a sur-reply, it must seek leave of court. *See, e.g.*, *Int'l Air Med. Servs. Inc. v. Triple-S Salud Inc.*, No. CV-15-00149-PHX-DGC, 2015 WL 8602495, at *3 (D. Ariz. Dec. 14, 2015). CWT filed it reply after Ker and Carrigan's reply to CWT's response to Ker and Carrigan's motion for summary judgment. Because CWT did not have the right to a sur-reply and did not obtain leave, the Court will not consider its reply. *See Punchard v. U.S. Bureau of Land Mgmt.*, No. CV-17-00148-TUC-JGZ, 2017 WL 4681904, at * 1 n.1 (D. Ariz. June 26, 2017).

CWT argues that within its response it filed a motion for leave to amend its complaint. Doc. 176 at 2. But the document only indicates that it is a reply and response to the motions for summary judgment. *See* Doc. 170. Indeed, the argument that CWT's complaint should be amended is buried in its summary judgment reply argument. The motion was not properly filed, and CWT was not entitled to reply. The Court will strike CWT's sur-reply in support of its leave to amend.

**IT IS ORDERED**:

1.      CWT's motion for summary judgment (Doc. 156) is **granted** as to Ker's defamation counter claims and **denied** in all other respects.

2.      Ker and Carrigan's motion for summary judgment (Doc. 165) is **denied**.

3.      Elizabeth's motion for summary judgment (Doc. 165) is **granted** as to the claim for constructive trust and **denied** as to the accounting claim.

4.      Ker and Carrigan's motion to strike (Doc. 175) is **granted**.

5.      The Court has set a telephonic hearing on **January 25, 2019 at 2:30 p.m.** The purpose of the hearing is to set a firm trial date and a final pretrial conference date.

Dated this 2nd day of January, 2019.

David G. Campbell
Senior United States District Judge